John **BAHL**, Timothy Bahl, William Bahl, Jeanne M. Jennings, Catherine Horton and Theresa Bacon, Appellants,

v.

**LAMBERT FARMS, INC., Appellee.**

Superior Court of Pennsylvania.

Submitted Dec. 4, 2000.

Filed April 25, 2001.

John Kocsis, Athens, for appellants.

David J. Barrett, Athens, for appellee.

Before POPOVICH, TODD, and OLSZEWSKI, JJ.

TODD, J.:

¶ 1 The matter before us involves an action to partition real estate filed by Appellants John Bahl, Timothy Bahl, William Bahl, Jeanne M. Jennings, Catherine Horton and Theresa Bacon, seeking their father, William J. Bahl's intestate share of a farm sold to Appellee Lambert Farms, Inc. in 1991. Following trial, and the denial of Appellants' post trial motions, judgment was entered for Appellee. Upon review, we reverse.

¶ 2 The relevant factual background is as follows: In 1991, a group of the heirs of William Bahl and his wife, Rose Bahl, sold the family farm in Forks Township, Sullivan County, to Appellee. The farm had been in the Bahl family for many years. William predeceased Rose and after Rose died intestate in 1969, title to the farm vested in their children and grandchildren by virtue of intestate succession pursuant to the statutes governing intestacy in Pennsylvania, 20 Pa.C.S.A. §§ 2101–2110. When the farm was sold to Appellee in 1991, the deed to the farm listed the grantors as Geraldine McDonald, Zita Warman, Genevieve Friedah and Kenneth Friedah, her husband, Rosemary Holland and Michael Holland, her husband, Patricia Blasi and Alex Blasi, her husband, Joseph P. Bahl, Jr. and Beverly J. Bahl, his wife. The deed did not list William J. Bahl, Appellants' father who died in 1980, or any of Appellants, his heirs.[1]

¶ 3 In 1998, Appellants brought an action in partition against Appellee seeking an intestate share of William J. Bahl's interest in the farm.[2] Appellants allege that their father, William J. Bahl, was the last child born to William and Rose Bahl and, therefore, his heirs are entitled to an order of partition for their father's intestate share of the farm as they were omitted from the deed. The case was tried before the Honorable Brendan J. Vanston, President Judge of the Sullivan County Court of Common Pleas, who entered an Order in favor of Appellee on February 29, 2000. Appellants moved for post-trial relief, which Judge Vanston denied by opinion and order on April 27, 2000. This timely appeal followed.

¶ 4 Appellants raise only one question for our consideration:

Whether William J. Bahl was the son of Rose and William Bahl, Sr. and, if so, whether the Appellants are entitled to an action in Partition of Real Estate against Appellee for their father's intestate share of the value of a farm owned by the Appellee.

(Appellants' Brief, at 4.)

¶ 5 William J. Bahl died in 1980. At the time the partition action was tried before Judge Vanston, the only siblings (children of William and Rose Bahl) who were still alive were Genevieve Friedah and Geraldine McDonald. In support of their Petition, Appellants submitted into evidence numerous documents in support of their position that their father, William J. Bahl, was a son and heir at law of William and Rose Bahl. The record before us contains many documents including letters to William J. Bahl from other family members referring to Rose Bahl as "Mom," various obituary notices listing William J. Bahl as the sibling of the other children of William and Rose Bahl, report cards for William J. Bahl signed by William Bahl as "parent," estate distribution notices including William J. Bahl as an heir, documents and correspondence to William J. Bahl containing various references to his position as a sibling of the other children of William and Rose Bahl, and William J. Bahl's baptismal certificate listing William and Rose Bahl as his parents.

¶ 6 Appellee argues that although the documents offered by Appellants purport to show that William J. Bahl was the natural son of William and Rose Bahl, in actuality, William J. Bahl was the out-of-wedlock son of William and Rose's daughter, Zita Bahl, who returned home to the farm unmarried at the age of 21 with a newborn infant. Appellee alleges that rather than face the inevitable community criticism of the 1920's, William and Rose Bahl decided to raise William J. Bahl as their own son, a sibling to the other natural Bahl children, including Zita Bahl.

¶ 7 In support of its position, Appellee offered the deposition testimony of Genevieve Friedah, daughter of William and Rose Bahl and younger sister of Zita Bahl. Friedah, who was 93 years old at the time of her deposition, testified that when she was 17 and living on the family farm, she specifically remembered Zita Bahl returning home with a baby boy after living away. She recalled under oath that her parents, William and Rose, named Zita's baby William, raised him as their own son, had him baptized as their own, and treated

---

1. Although the record is unclear, it appears that those individuals listed as grantors on the deed were the living heirs of Rose Bahl at the time of the sale, excluding the heirs of William J. Bahl.

2. We note that the record is devoid of any mention of or objection to the seven-year delay in filing of Appellants' partition action.

him as the sibling of their other children in order to avoid embarrassment and community criticism. She further testified that to her knowledge, her parents never formally adopted him as their own child. (N.T. Deposition of Genevieve Friedah, 6/2/98, at 6–10.)

¶ 8 Appellee argued at trial that despite the existence of the documentary evidence that William and Rose Bahl raised William J. Bahl as one of their children to avoid embarrassment, in the face of Genevieve Friedah's testimony, Appellants failed to prove that William J. Bahl was their natural (or formally adopted) son. Accordingly, Appellee maintains that William J. Bahl's heirs are not entitled to an intestate share of the family farm sold to Appellee.

¶ 9 The trial court, upon review of the documentary evidence, as well as the deposition testimony of Friedah, denied Appellants' petition and post-trial motion for relief. In his opinion, Judge Vanston held that Friedah's testimony of her personal recollections about William J. Bahl's origins provided more competent and compelling evidence than the documents submitted by Appellants purporting to prove that William J. Bahl was the natural child of William and Rose Bahl. (Trial Court Opinion, 4/26/2000, at 2.)

¶ 10 Our review of the relevant case law in this area reveals that challenges to maternity and paternity for purposes of proving entitlement to inheritance have been relatively uncommon. The vast majority of precedent concerns cases where paternity alone, not paternity and maternity, are challenged, such as where a named father denies paternity in an action by the mother for child support. The present case, in contrast, presents an atypical factual situation where the heirs of a deceased child are attempting to prove that his natural parents were the couple who raised him and claimed him during their lives as their own child.

¶ 11 For guidance, we first look to two decisions of this Court regarding proof of paternity for purposes of intestate succession. In *In re Estate of Greenwood*, 402 Pa.Super. 536, 587 A.2d 749 (1991), we held that:

> the standard of proof required by a child born out of wedlock to establish a right to intestate succession by, from and through a person alleged to be the father of the claimant rises to a level of "clear and convincing" evidence. 20 Pa. C.S.A. § 2107(c)(3)[.]

*Id.* at 754 (citing *Estate of Hoffman*, 320 Pa.Super. 113, 466 A.2d 1087 (1983)). The standard to be applied should be the same to prove paternity or maternity. Accordingly, we hold that Appellants were required to prove by clear and convincing evidence that Rose Bahl, and not Zita Bahl, was William J. Bahl's mother.

¶ 12 In *Estate of Hoffman*, this Court heard and rejected the case of an individual described as a "foster child" who claimed inheritance from the family that took her in and raised her as their own without adopting her. This Court later summarized the facts and holding of *Estate of Hoffman* in *In re Estate of Simmons–Carton*, 434 Pa.Super. 641, 644 A.2d 791 (1994), as follows:

> The facts of *Hoffman*, briefly stated, reveal that Ruth H. DeLong, the appellant in *Hoffman*, shortly after her birth in 1927 was taken to the home of her mother's sister, Mary Hoffman, and Mary's Husband, Sidney S. Hoffman. Ruth was raised by Mary and Sidney and lived with them until her marriage in 1946. However, around the time Ruth was twelve or thirteen, she learned by accident that her "Aunt" Marian Mentch was in fact her natural mother. Ruth was never adopted by Mary or

Sidney. Sidney died in 1953 and Mary died in 1972. In 1978 Owen Hoffman, Sidney's brother died. Owen, whose wife had predeceased him, died without leaving issue. Ruth claimed to be the *natural* daughter of Sidney S. Hoffman, in an attempt to claim entitlement to one-half of Owen Hoffman's residuary estate. The trial court found that the claim of Ruth DeLong had not been sustained by clear and convincing evidence. The trial court stated:

> The record merely indicates that Sidney and Mary took their illegitimate niece into their home to raise as their own child. There were no facts tending to support claimant's allegation that Sidney was her natural father. All of the evidence presented in this case is consistent with the fact that Mary and Sidney were raising claimant as their foster child.

*Id.* at 1090. This court observed "that claims of paternity made after the lips of the alleged father have been sealed by death are in that class of claims which must be subjected to the closest scrutiny and which can be allowed only on strict proof so that injustice will not be done." *Id.* at 1089.

*In re Estate of Simmons–Carton,* 644 A.2d at 796.

■ ¶ 13 Where the findings of the trial judge are supported by competent evidence, "an appellate court will not reverse in the absence of an abuse of discretion, a capricious disregard of evidence, or an error of law." *Estate of Hoffman,* 466 A.2d at 1090 (citations omitted).

■ ¶ 14 As in *Estate of Hoffman,* the record here indicates that William and Rose Bahl took their grandson into their home to raise him as their own child. None of the evidence of record supports Appellants' claims that their father was the natural child of William and Rose. In

fact, the testimony of Genevieve Friedah further supports Appellee's contention to the contrary. Accordingly, we find no abuse of the trial court's discretion in its determination that Appellants failed to prove by clear and convincing evidence that William J. Bahl was the natural child of William and Rose Bahl.

■ ¶ 15 However, our analysis must not end here, for Appellants next argue that Appellee should be estopped from denying that William and Rose Bahl were William J. Bahl's parents in light of the Bahls' conduct throughout their lives as William J. Bahl's parents. Appellants assert that the voluminous documentary evidence of record, coupled with the deposition testimony of Geraldine Friedah, all of which support the proposition that William and Rose Bahl wanted the world to view William J. Bahl as their son, warrants a legal determination that he was, for all intents and purposes, including intestate succession, their son. We agree.

¶ 16 In *Curran v. Eberharter,* 361 Pa.Super. 65, 521 A.2d 474 (1987), we defined the doctrine of equitable estoppel:

> Equitable estoppel arises when a party by acts or representation intentionally or through culpable negligence, induces another to believe that certain facts exist and the other justifiably relies and acts upon such belief, so that the latter will be prejudiced if the former is permitted to deny the existence of such facts.

*Id.* at 479–80 (citation omitted). The concept of paternity by estoppel has been upheld in numerous circumstances where a child or mother seeks child support from a purported father who has held himself out to the child and community as the father, but then attempts to deny paternity when support is sought. *See Brinkley v. King,* 549 Pa. 241, 249, 701 A.2d 176, 180 (1997)

(holding that the doctrine of estoppel embodies the fiction that, regardless of biology and the presumption of paternity, the person who has cared for the child is the child's parent) and citations therein.

¶ 17 In *Brinkley,* the Court repeated that "under certain circumstances, a person might be estopped from challenging paternity where that person has by his or her conduct accepted a given person as the father of the child." *Id.* (quoting *Jones v. Trojak,* 535 Pa. 95, 634 A.2d 201 (1993)).

¶ 18 Similarly, in *Freedman v. McCandless,* 539 Pa. 584, 654 A.2d 529 (1995), the Court stated:

> Estoppel in paternity actions is merely the legal determination that because of a person's conduct (e.g. holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father.... [T]he doctrine of estoppel in paternity actions is aimed at "achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding the paternity of the child."

*Id.* at 591–92, 654 A.2d at 532–33. More recently, in *Fish v. Behers,* 559 Pa. 523, 741 A.2d 721 (1999), the Supreme Court affirmed its view that public policy demands that children have the right to certainty in their relationships with their parents, stating:

> Estoppel is based on the public policy that children should be secure in knowing who their parents are. If a certain person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from

being told that the father he has known all his life is not in fact his father.

*Id.* at 530, 741 A.2d at 724 (citations omitted).

¶ 19 Although the doctrine of paternity by estoppel originally was established for the protection of minor children, Appellants argue that it should apply in this case despite the fact that the "child" in this case already had reached majority and died before this litigation was commenced. Appellants rely on our decision in *In re Estate of Simmons–Carton, supra,* where we examined the concept of paternity by estoppel as it applied to a deceased child who had attained majority for purposes of intestate succession. In *In re Estate of Simmons–Carton,* we examined the question of whether both the natural mother and purported natural father qualified to be named co-administrators of the estate of their daughter, Dory, who died intestate in an automobile accident at the age of 20. The decedent's mother, Mirjam, in an attempt to prevent her estranged husband, Donald, from inheriting by intestate succession from Dory, denied that he was Dory's natural father. She testified that she had given birth to Dory in the Netherlands in January of 1965 and that she had met Donald the year before. Mirjam testified that she believed she had been impregnated by someone other than Donald, but she refused to provide the alleged natural father's name. The record is unclear whether Donald had access to Mirjam during the relevant time period prior to Dory's birth, but Mirjam acknowledged that she may have seen Donald sometime in the spring of 1964. 644 A.2d at 793.

¶ 20 The record in *In re Estate of Simmons–Carton* revealed, however, that the parties had lived together as a family until Mirjam and Donald separated in 1987. Donald had provided primary support for the family during the first 18 years of

Dory's life and paid for at least two years of Dory's college tuition. *Id.* Following Dory's death in 1988, letters of administration were issued to Mirjam. Donald's name was added soon thereafter and Mirjam disputed the addition. Mirjam petitioned the Register of Wills to remove Donald's name as co-administrator of Dory's estate, alleging that Donald was not Dory's natural father. The Register of Wills revoked the letters of administration containing Donald's name and Donald appealed. *Id.* at 794. The trial court reversed the Register of Wills' decision and this Court affirmed, holding Donald proved that he had openly held out Dory to be his daughter throughout her life and therefore now should be considered her father for purposes of descent and inheritance. Accordingly, Mirjam was estopped from denying Donald's paternity of Dory. *Id.* at 797.

¶ 21 Appellants argue that our holding in *In re Estate of Simmons–Carton* is applicable to the case before us. We agree. Nothing in the evidence presented at trial by either party disproves the premise that William and Rose Bahl intended, throughout their lives and in their deaths, to regard William J. Bahl as their own son. The probate documents filed following Rose's death clearly indicate that William J. Bahl was a beneficiary of her estate, inheriting a portion equal to those inherited by her other children. To now allow Appellee, nearly 30 years after Rose's death, to attempt to disprove William and Rose Bahls' clear intent to raise and treat William J. Bahl as their son, would be a rejection of the public policy our Courts have affirmed many times: that a child has the right to expect the law will protect his rights and those of his heirs with regard to those whom the world knows as his parents. Accordingly, we find Appellants have demonstrated, through the concept of equitable estoppel, that William J. Bahl was the son of William and Rose Bahl for purposes of his right to inherit from them by intestate succession.

 ¶ 22 Appellants further argue that 23 Pa.C.S.A. § 5102 [3] and 20 Pa.C.S.A. § 2107,[4] when read in the context of the

---

3. **§ 5102. Children declared to be legitimate**

 (a) **General rule.**—All children shall be legitimate irrespective of the marital status of their parents, and, in every case where children are born out of wedlock, they shall enjoy all the rights and privileges as if they had been born during the wedlock of their parents except as otherwise provided in Title 20 (relating to decedents, estates and fiduciaries).

 (b) **Determination of paternity.**—For purposes of prescribing benefits to children born out of wedlock by, from and through the father, paternity shall be determined by any one of the following ways:

 (1) If the parents of a child born out of wedlock shall have married each other.

 (2) If, during the lifetime of the child, it is determined by clear and convincing evidence that the father openly holds out the child to be his and either receives the child into his home or provides support for the child.

 (3) If there is clear and convincing evidence that the man was the father of the child, which may include a prior court determination of paternity.
 23 Pa.C.S.A. § 5102.

4. **§ 2107. Persons born out of wedlock.**

 (a) **Child of mother.**—For purposes of descent by, from and through a person born out of wedlock, he shall be considered the child of his mother.

 \* \* \*

 (c) **Child of father.**—For purposes of descent by, from and through a person born out of wedlock, he shall be considered the child of his father when the identity of the father has been determined in any one of the following ways:

 (1) If the parents of a child born out of wedlock shall have married each other.

 (2) If during the lifetime of the child, the father openly holds out the child to be his

record before us, support their argument that William and Rose Bahl were the parents by estoppel of William J. Bahl for purposes of intestate succession.

¶ 23 In evaluating the application of 20 Pa.C.S.A. § 2107 and 23 Pa.C.S.A. § 5102, also relied upon by the purported father in *In re Estate of Simmons–Carton*, we concluded:

> The above statutory language, when applied to the facts of this case, indicates that Donald certainly would be held to be Dory's father for purposes of a determination of paternity. As the child of Donald, Dory would be able to inherit from him. It follows that Donald should be able to inherit from Dory under the intestacy provisions of § 2107.

*In re Estate of Simmons–Carton*, 644 A.2d at 798.

¶ 24 Appellee here argues, however, that the statutes in question were enacted in 1978, nine years after Rose Bahl died, thereby rendering them inapplicable to the case before us. We agree. The Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1926, provides: "No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." The statutes at issue here make no provision for retroactivity and are therefore, strictly speaking, inapplicable to the case *sub judice.*

¶ 25 Nonetheless, there is no dispute that the ample, uncontroverted documentary evidence of record, including report cards, a baptismal certificate, estate notices and obituaries, as well as letters among family members, all demonstrate the lifelong intent of William and Rose Bahl to treat William J. Bahl as their son.

> and receives the child into his home, or openly holds the child out to be his and provides support for the child which shall be determined by clear and convincing evidence.

The deposition testimony of Genevieve Friedah only serves to buttress Appellants' position that William J. Bahl was raised as Friedah's brother, not her nephew, by her parents, William and Rose.

¶ 26 Therefore, while we agree with the trial court that Appellants failed to produce clear and convincing evidence that William J. Bahl was the natural child of William and Rose, we find that the evidence of record produced by both sides unquestionably is clear and convincing that during William J. Bahl's lifetime, William and Rose openly held him out to be their son, received him into their home and provided support for him. The record is devoid of any evidence that at any time during their lives, or even upon their deaths, William and Rose Bahl denied being William J. Bahl's parents. William J. Bahl's heirs therefore must have the right to claim their father's fair intestate share as a child of William and Rose. Accordingly, the trial court's order of February 29, 2000 denying Appellants' petition for partition is hereby reversed and remanded for additional proceedings consistent with this Opinion.

¶ 27 Reversed and remanded. Jurisdiction relinquished.

¶ 28 OLSZEWSKI, J., files a concurring opinion.

OLSZEWSKI, J., Concurring:

¶ 1 While I agree with my esteemed colleagues that we must reverse the decision of the lower court, I do so for reasons other than those stated; thus, I write separately.

> (3) If there is clear and convincing evidence that the man was the father of the child, which may include a prior court determination of paternity.

20 Pa.C.S.A. § 2107.

¶ 2 I agree with the majority's assertion that the trial court did not abuse its discretion in its decision that appellants failed to prove by clear and convincing evidence that William J. Bahl was the natural or adopted child of William and Rose Bahl. I also agree that 23 Pa.C.S.A. § 5102 and § 2107 are inapplicable to the case before us. However, I would contend that under those circumstances alone, we would be constrained to follow the precedent established in *In re Estate of Hoffman*, 320 Pa.Super. 113, 466 A.2d 1087 (1983). The majority rejects *In re Estate of Hoffman*, as inapplicable to these facts because appellee should be estopped from denying William J. Bahl's parentage in light of the Bahl's conduct throughout their grandson's life. I cannot agree.

¶ 3 The majority's opinion, in effect, would create "common law adoption" for inheritance purposes. This is in direct conflict with *In re Estate of Hoffman*, which clearly established that "foster children" raised by relatives are not issue as defined by Pennsylvania's laws on intestate succession. *See id.* at 1090 (The Court determined that appellee was the Hoffman's "foster child" and not their issue). The majority reached this decision even though Ruth Hoffman DeLong established that the Hoffman's clearly held her out to the community as their daughter. *See id.*

¶ 4 Instead, the majority relies on *In re Estate of Simmons–Carton*, 434 Pa.Super. 641, 644 A.2d 791 (1994), to establish estoppel in intestate cases where maternity and/or paternity is at issue. However, that case is clearly distinguishable and inapplicable to the present facts. The father in *In re Estate of Simmons–Carton* believed throughout his daughter's life that he was her natural father. *See id.* at 793–94. In fact, he married the child's mother, lived with them as a family until the parties separated, and provided support for the child. *See id.* The Court determined that the child's mother was equitably estopped from denying paternity when she had never mentioned during the child's life that he might not be the father. *See id.* at 800. In the present case, it is clear that William and Rose Bahl knew that they were the grandparents of William, not his parents. They simply chose to forego the humiliation associated with his illegitimate status in the 1920's, and raise him as their own. As such, they were William's "foster parents," not his natural or adopted parents. *See In re Estate of Hoffman*, at 1090.

¶ 5 However, any party in interest should have brought these claims within five years of distribution of either William or Rose Bahl's estate. 20 Pa.C.S. § 3521; *see* Deposition Genevieve Friedah at 19. Because the beneficiaries never raised this issue, the lower court should not have reviewed it. Instead of properly contesting the proposed beneficiaries, the parties simply sold the property.

¶ 6 In addition, appellee had at least constructive notice of William J. Bahl's interest in the property. Constructive notice is what a party "could have learned by inquiry of the person in possession and of others who, they had reason to believe, knew of facts which might affect title, and also by what appeared in the appropriate indexes in the office of the recorder of deeds." *Mid–State Bank and Trust Co. v. Globalnet Intern., Inc.*, 710 A.2d 1187, 1192 (Pa.Super.1998). Estate documentation recorded in the Orphan's Court lists William J. Bahl, as the son of Rose Bahl, and proposes distribution of ⅙ of the estate to him. Orphan's Court of Sullivan County, Pennsylvania 44th Judicial District Number 6 September Term 1969. Estate documentation dated August 23, 1988, lists William J. Bahl's issue as heirs to the

Estate of Rose Bahl. Thus, appellee would have had constructive notice of appellants' intestate claim to Rose Bahl's farm when they purchased it in 1991.

¶ 7 Under these circumstances, the trial court should not have permitted appellee to challenge William J. Bahl's status or that of his issue. Therefore, I agree that the trial court's order denying appellants' petition for partition should be reversed and the case remanded.