Karen A. TREGONING, Appellee

v.

Walter WILTSCHEK and Monica Del Carmen Gomez Perez

**Appeal of Walter Wiltschek, Appellant.**

Superior Court of Pennsylvania.

Submitted June 18, 2001.
Filed Aug. 20, 2001.

**3.** Appellant also suggests that the Superior Court erred in not quashing the appeal below for failure to file a Rule 3051 petition. Quashal is usually appropriate where the order below was unappealable, *see Toll v. Toll,* 293 Pa.Super. 549, 439 A.2d 712 (1981) (court lacks jurisdiction—appeal interlocutory), the appeal was untimely, *see Stotsenburg v. Frost,* 465 Pa. 187, 348 A.2d 418 (1975), or the Court otherwise lacked jurisdiction, *see* Pa.R.C.P.1972. Rule 1972(7) also permits, as a disposition without reaching the merits, a party to move to quash "for any other reasons on the record." Quashal is not proper here. Clearly, a judgment of *non pros* dismissed with prejudice is a final, appealable order because it fully disposes of the case. *See* Pa.R.A.P. 341(b)(1) ("A final order is any order that: disposes of all claims and of all parties[.]"). Moreover, the appeal was timely filed, the Superior Court had jurisdiction over the appeal, and appellant does not articulate any other ground for quashal under Rule 1972(7). Accordingly, we conclude that quashal is inappropriate; the proper consequence of the failure to file a Rule 3051 petition is a waiver of the substantive claims that would be raised.

Richard K. Konkel, York, for appellant.

Susan A. Docktor, York, for Guardian Ad Litem, appellee.

Kathleen J. Prendergast, York, for Tregoning, appellee.

Before: CAVANAUGH, OLSZEWSKI and BECK, JJ.

CAVANAUGH, J.:

¶ 1 This is an interlocutory appeal from the lower court's order requiring appellant, Walter Wiltschek, to submit to a blood test for the purpose of determining paternity. Because we find that appellee, Karen A. Tregoning, is estopped from denying the paternity of Mr. Wiltschek, we reverse.

¶ 2 The dispute between the parties relates to Jazmin Wiltschek, born on January 31, 1995, to her natural mother, defendant below Monica del Carmen Gomez Perez, in Santiago, Chile.[1] Appellant was named as the father on the birth certificate. Also on January 31, 1995, appellant and Ms. Gomez Perez purported to marry one another, despite appellant's being married to appellee at the time. Two weeks later, appellant and the natural mother took Jazmin from Chile to Toronto, Canada, where appellee awaited their arrival. (At that time, appellee had in her custody a child the parties sought to adopt, but was later returned to the child's birth mother in York County pursuant to court order.) Ms. Gomez Perez returned to Chile where she has remained. Although Walter and Karen had become divorced, they lived together as a family unit with Jazmin in Europe for the next two years and then returned to the United States in April, 1997. They parted company later in 1997. In early 1998, Karen married Maurice Tre-

---

1. Ms. Gomez Perez did not participate in the proceedings below and is not a participating party on appeal. All references to "appellant" are to Walter Wiltschek.

goning, and she and Jazmin took up residence with him and his two adolescent children. Walter frequently traveled internationally for extended periods of time on business. During the years 1998, 1999, and 2000, he maintained contact with Jazmin and exercised custody over her one night per week during those times he was in the United States.

¶ 3 In August, 2000, appellant assumed sole custody of Jazmin. He enrolled her in a religious school and did not advise appellee of her whereabouts. Custody litigation ensued, and the parties have agreed to a temporary custody order, which is not at issue on appeal. The only portion of the lower court order before us is the order that appellant submit to a blood test, pursuant to 23 Pa.C.S.A. § 5104.[2]

¶ 4 The statutory authority for the court ordering of blood tests to determine paternity is as follows:

In any matter subject to this section in which paternity, parentage or identity of a child is a relevant fact, the court, upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to the tests, the court may resolve the question of paternity, parentage of identity of a child against the party or enforce its order if the rights of others and the interests of justice so require.

23 Pa.C.S.A. § 5104(c).

■■■ ¶ 5 Whether to allow paternity testing raises issues of presumptive pater-

nity, estoppel, and both societal and familial interests. *Strayer v. Ryan*, 725 A.2d 785, 787–788, n. 1 (Pa.Super.1999). The presumption of paternity only applies in cases where the policy of preservation of marriages may be advanced. *Fish v. Behers*, 559 Pa. 523, 741 A.2d 721 (1999). Where there is no longer an intact family or marriage to preserve, the presumption of paternity is inapplicable. *Id.* A party may be estopped from denying a husband's paternity of a child if either the husband or the wife holds the child out to be the child of the marriage. *Id.* As explained by the supreme court:

Estoppel in paternity actions is merely the legal determination that because of a person's conduct (e.g., holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father.

Under certain circumstances, a person might be estopped from challenging paternity where that person has by his or her conduct accepted a given person as the father of the child. The estoppel cases indicate that where the principle is operative, blood tests may be irrelevant, for the law will not permit a person in these situations to challenge the status which he or she has previously accepted.

*Id.*, at 723 (quoting *Freedman v. McCandless*, 539 Pa. 584, 654 A.2d 529, 532–533 (1995) and *Jones v. Trojak*, 535 Pa. 95, 634 A.2d 201, 206 (1993)).

---

**2.** This court has jurisdiction over the interlocutory appeal of the order. *See Freedman v. McCandless*, 539 Pa. 584, 654 A.2d 529 (1995); *Jones v. Trojak*, 535 Pa. 95, 634 A.2d

201 (1993); *cf. D.L.H. v. R.W.L.*, 2001 PA-Super 160, 777 A.2d 1158 (2001) (no interlocutory appeal after parties submit to blood tests without complaint).

■ ¶ 6 In the instant case, the evidence establishes that appellee previously accepted appellant's holding himself out as the father of Jazmin. The following facts of record are probative: 1) Jazmin bears appellant's last name; 2) appellant is named as Jazmin's father on her birth certificate; 3) appellee lived as a family unit with appellant and Jazmin in Europe for the first two years of Jazmin's life; 4) appellee filed a petition for custody on August 29, 2000, throughout which she identified and referred to appellant as "father;" 5) appellant's Austrian passport issued in 1995 listed Jazmin as his daughter; and 6) appellee filed an emergency custody petition on November 6, 2000, in which she again throughout referred to appellant as the "father."

¶ 7 Appellee has previously accepted the status of appellant as the father of Jazmin. During the period of time between 1995 and 1997 it served appellee's interest for appellant to be considered the father of Jazmin since it was expedient and enabled both parties to travel together with Jazmin as a functional family unit. Now appellee would find it in her interest for appellant to be considered a third party with only *in loco parentis* status given her plans to formally adopt Jazmin with her current husband. The law will not countenance this attempt to selectively employ principles so fundamental to the well-being of the child involved in an issue of paternity. Public policy demands that children have the right to certainty in their relationships with their parents. *Bahl v. Lambert Farms, Inc.*, 2001 PASuper 125, ¶ 18, 773 A.2d 1256 (2001). As we quoted in *Bahl:*

> Estoppel is based on the public policy that children should be secure in knowing who their parents are. If a certain person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father he has known all his life is not in fact his father. *Fish v. Behers*, 741 A.2d at 724 (citations omitted).

*Id.*

¶ 8 There can be no other reasonable reading of the record but that when it suited appellee's interests she accepted appellant's role as the father of Jazmin. That position having been accepted and promoted by both parties requires the conclusion that appellee is now legally estopped from asserting a challenge to the paternity of appellant.

¶ 9 Since appellee is estopped from challenging the paternity of appellant, the blood tests are rendered irrelevant. We conclude that it was error for the lower court to order testing of appellant since he has never denied paternity and since appellee's actions evidence her prior acceptance of appellant as the father of Jazmin. *See Fish v. Behers, supra.*

¶ 10 We note the limits of our ruling in this matter. It does not decide any issue of custody or support. We are not faced with issues regarding termination of appellant's parental rights or legal adoption of Jazmin by the Tregonings. Nor are we asked to render judgment regarding the means by which these parties obtained custody of Jazmin from her native Chile without necessity of involvement of the legal system.

¶ 11 Order reversed to the extent it required appellant to submit to a blood test. Case remanded. Jurisdiction is relinquished.

¶ 12 Judge BECK files a dissenting opinion.

BECK, J., dissenting:

¶ 1 I respectfully dissent. I would find that neither the presumption of paternity

nor principles of estoppel apply to this difficult and complex custody case.

¶ 2 Appellant Walter Wiltschek ("Walter") asserts that he is the biological father of the child in question. He also asserts that Monica Del Carmen Gomez Perez ("Monica"), a named appellant, is the child's biological mother. The petition for custody is brought by appellee, Karen A. Tregoning ("Karen"), who is the former wife of Walter. She does not allege any biological relationship to the child.

¶ 3 Walter argues that he should not be subject to paternity testing because he has acted as the child's father for a period of years and therefore he, Walter, would be estopped from asserting otherwise if he attempted to do so. In addition, he draws the court's attention to the fact that he is named as the child's father on her birth certificate, that he is the only father she has ever known, that her American citizenship is at risk if he is deemed not to be her biological father and that the child's putative biological mother, Monica, entered into a stipulation agreement granting him full custody.

¶ 4 Karen argues that Walter's name on the birth certificate was fraudulent and done only to allow him to leave Chile unimpeded, with the child in his custody. She draws the court's attention to the fact that Walter has traveled throughout the world in the years since the child's birth and that Walter's marriage to Monica, the putative biological mother, was invalid because he was already married to her (Karen) at the time. She also states that she and Walter divorced in 1995 but the child continued to live with and be cared for by her. She claims (and Walter concedes) that Walter has never paid child support and that the longest amount of time Walter spent living with the child (ten months) occurred some five years ago.

¶ 5 The trial court, faced with the complicated events of this case, recognized the need for DNA testing, testimony from the child's putative biological mother and the appointment of a guardian *ad litem* to represent the child. The court ordered all of the above, while at the same time returning the matter to the status quo, *i.e.,* custody with Karen and visitation with Walter. I can find no error in this interim resolution and instead see it as the most appropriate way in which to proceed.

¶ 6 The presumption of paternity is plainly inapplicable. Not only is there no intact family or marriage to preserve, there was no intact family into which the child was born. *Fish v. Behers,* 559 Pa. 523, 741 A.2d 721, 723 (1999); *Brinkley v. King,* 549 Pa. 241, 701 A.2d 176, 181 (1997). Further, the principle of estoppel does not apply here, as there is little or no evidence that Karen held the child out as Walter's daughter. Instead, according to Karen's testimony, the parties engaged in a rather complex ruse designed to allow them continued custody of the little girl at the center of this controversy.

¶ 7 I would find that Walter's failure to support the child and his extended absences from her, coupled with the fact that she has been in Karen's care for several years, make application of estoppel principles against Karen inappropriate. Further, I believe the methods employed by the trial court to resolve this case are not only proper under the law, but also appropriate under the circumstances. In particular, I would rely on 23 Pa.C.S.A. § 5104, the statute which empowers the court to order testing. Section 5104 clearly leaves to the court the discretion to order testing where appropriate.

¶ 8 Rather than reverse the order entered below, I would affirm it and permit the matter to proceed. That way the trial judge, who is in the best position to assess

the child's best interests, as well as evaluate the parties' rights and motives, will be privy to as much relevant information as possible in reaching his decision on custody.