654 A.2d 529

**Philip FREEDMAN, Appellant,**

v.

**Margarite J. McCANDLESS, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 8, 1994.

Decided Feb. 15, 1995.

586

James D. Crawford, Albert Momjian, Philadelphia, for P. Freedman.

George Porter, Hershey, for M. McCandless.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

FLAHERTY, Justice.

This is a child support case involving appeals from two orders of Superior Court. In the first appeal, the trial court ordered appellant Freedman to submit to blood tests and Superior Court quashed Freedman's appeal from the blood test order. Freedman appeals Superior Court's quashing of his appeal from the blood test order. In the second appeal, the trial court entered a support order in the amount of $110 per week plus an arrearage payment of $30 per week. Superior Court vacated the trial court's order of support and remanded the case for a hearing de novo, which was to include consideration of Freedman's claim that there was an improper commingling of adjudicative and adversarial functions in the proceedings before the trial court, 433 Pa.Super. 642, 638 A.2d 275. Freedman appeals Superior Court's order remanding the support matter for a hearing, alleging that both the support order and the blood test order should have been vacated, and also that Superior Court erred in treating the blood test order as a non-appealable interlocutory order.

The relevant procedural history of the case is as follows. The mother of the child, appellee McCandless, filed a complaint for child support against Freedman on January 24, 1990. On April 23, 1990, Freedman filed a motion to add one Grant Thomas Haxall as an additional defendant, alleging that Haxall was the father of the child.[1] This motion was denied on July 23, 1990.[2] A subsequent petition for reconsideration was also denied. Freedman then sought permission from Superior Court to appeal from the denial of his motion to add an additional defendant. On January 29, 1991, Superior Court denied Freedman's petition.

On August 14, 1990, Freedman filed an answer and new matter alleging that the child's father was Haxall; that McCandless and Haxall planned to have the child; that they lived together while McCandless was pregnant; that they

1. Prior to the action against Freedman, McCandless had sued Haxall for child support. See note 2, infra.

2. The record of the Haxall matter is not part of this record, and we cannot determine, therefore, with certainty, what occurred in that case.

agreed to attribute paternity of the child to Haxall on the birth certificate (the child's name is Haxall); that they acknowledged the child as their own at birth; that McCandless and Haxall lived together after the birth of the child; and that Haxall held the child out as his child by paying some of the child's expenses, introducing the child as his son, and by arranging visitation between his parents and the child.

The trial court conducted a hearing on the issues of estoppel and laches on December 23, 1991 and January 14, 1992. At the conclusion of the hearing, the trial court held that McCandless was not estopped from bringing an action for support against Freedman and ordered the parties and the child to submit to blood tests. Freedman's motion for reconsideration was denied on February 21, 1992, and Freedman appealed this order to Superior Court.

Blood testing was scheduled on July 7, 1992 and Freedman did not appear. On August 17, 1992 the trial court conducted a contempt hearing. Freedman was not present at this hearing, and in Freedman's absence, the trial court found that Freedman was the father of the child in question. On September 4, 1992 a conference before a support master was conducted and on September 11, 1992 an order of support was entered for $110 plus $30 on arrearages to be paid on a weekly basis. Freedman filed motions to dismiss and for reconsideration, which were denied, and on September 28, 1992 Freedman demanded a hearing on the support order. The trial court denied the request for hearing on October 1, 1992.

As to Freedman's appeal relating to blood tests, Superior Court quashed the appeal on the grounds that it was interlocutory. According to Superior Court, in order for such an appeal to be heard, there must be a presumptive parent, i.e., the mother must have been married when the child was born, or the case must implicate "situations which permanently place one of the parties out of court." That court went on to observe that presumptive parentage might arise in ways other than a child being born during wedlock, such as when a father holds himself out as the parent; a father having been found to be the parent by a court; or a father having been ordered to

pay child support.[3]  Even though one of these considerations applies to the facts of this case (Haxall allegedly held himself out to be the father), the court held that before a mother can be estopped from "denying the presumptive parent's paternity, there must unequivocally be a presumptive parent, not the mere supposition of one."  Restated, Superior Court apparently means that Freedman cannot successfully claim that McCandless is estopped from denying Haxall's paternity, for Haxall and McCandless were never married.  Thus, in Superior Court's view, an interlocutory appeal of a blood test order will be allowed only when there has been a marriage.  Superior Court also determined, however, that even if the appeal were permitted, its review of the testimony at the hearings on estoppel indicated that McCandless provided sufficient evidence to dispel the defense of estoppel.

As to Freedman's appeal on the support issue, Superior Court remanded for a de novo support hearing pursuant to Rule 1910.11(i) as well as for a hearing on a collateral matter.[4]

---

**3.**  In *John M. v. Paula T.*, 524 Pa. 306, 318–19, 571 A.2d 1380, 1386–87 (1990), this court held that the General Assembly has codified the principle of paternity by estoppel in a statute which has been substantially reenacted by Act of Dec. 19, 1990, P.L. 1240, No. 206, § 2, 23 Pa.C.S. § 5102:

**§ 5102.  Children declared to be legitimate**

\* \* \* \* \* \*

**(b) Determination of paternity.**  For purposes of prescribing benefits to children born out of wedlock by, from and through the father, paternity shall be determined by any one of the following ways:
(1) If the parents of a child born out of wedlock have married each other.
(2) If, during the lifetime of the child, it is determined by clear and convincing evidence that the father openly holds out the child to be his and either receives the child into his home or provides support for the child.
(3) If there is clear and convincing evidence that the man was the father of the child, which may include a prior court determination of paternity.

**4.**  Rule 1910.11(i) provides, in pertinent part:

If the court does not enter an order under subdivision (d) or (f) within five days of the conference, or if an order is entered and a demand for a hearing before the court is filed, there shall be a hearing de novo before the court.

We granted allocatur in order to address the appealability of blood test orders and to consider whether the trial court's determination of paternity was conducted in a manner violative of due process.

In *Jones v. Trojak*, 535 Pa. 95, 634 A.2d 201 (1993) this court held that blood test orders are appealable even though they are interlocutory. Id. at 101, 634 A.2d at 204. The rationale for this holding is that it serves the best interests of the child:

> Our concern is that once a party to a paternity action submits to a blood test, the psychological and moral damage will have been done, the family unit will have been intruded upon, and, most importantly, the child will have been scarred from the mental stress and the social stigma associated with having the identity of his or her parents investigated. Restated, this Court's concern is that the potential negative ramifications of a blood test on the child are irreversible.

Id. at 103, 634 A.2d at 205.

In *Trojak* the child's mother claimed that someone other than the man to whom she was married and with whom she was living at the time the child was conceived, one Trojak, was the father. Trojak denied paternity and objected to the trial court's order of blood tests on the grounds that the mother had not rebutted the presumption of her former husband's paternity. In that case, this court held that it is appropriate to determine the actual relationship of the presumptive father (the husband) and natural mother of the child before blood tests are ordered. "A court may order blood tests to determine paternity only when the presumption of paternity [which applies when the mother was married at the time of concep-

The court did not enter its order within five days, and Superior Court correctly read Rule 1910.11(i) to require a de novo hearing upon demand.

The collateral matter was whether attorney for the plaintiff, while he represented plaintiff, also held a position as legal advisor to the domestic relations office of Dauphin County, which deprived Freedman of due process.

tion and birth] has been overcome." *Trojak*, 535 Pa. at 105, 634 A.2d at 206.

The presumption can be overcome by proof that the husband was impotent or did not have sexual access to the wife when the child was conceived. However, if any person, by his or her conduct recognized a given person as the father of the child, that person may be estopped from challenging paternity. The *Trojak* court pointed out that where estoppel is applied, blood tests may be irrelevant, for the law will not permit a person in estoppel situations to challenge the status which he or she has previously accepted. Only when estoppel does not apply will blood tests be ordered. In *Trojak* estoppel did not apply because the mother was able to establish by clear, direct, convincing and unanswerable evidence that she and her husband did not live together as an intact family; her husband had not accepted the child as his own; the husband and wife had repudiated their marriage vows long ago; the husband never supported the child in any manner; and when the child was conceived, the husband was impotent.

Our question, thus, is whether the appealability of blood tests, under *Trojak*, is properly limited to cases in which there is a claim of estoppel and the mother was married when the child was conceived and born. For the reasons that follow we extend the rule of *Trojak* to apply to all cases for child support where blood tests are ordered and the alleged father seeks to appeal the blood test order based on a claim of estoppel.

Estoppel in paternity actions is merely the legal determination that because of a person's conduct (e.g., holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father.[5] As

5. In *John M. v. Paula T.*, 524 Pa. 306, 318, 571 A.2d 1380, 1386 (1990), cert. denied, 498 U.S. 850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990), this court described estoppel cases as follows:

Superior Court has observed, the doctrine of estoppel in paternity actions is aimed at "achieving fairness as between the parents by holding them, *both* mother and father, to their prior conduct regarding the paternity of the child." *Gulla v. Fitzpatrick*, 408 Pa.Super 269, 279, 596 A.2d 851 (1991).

In cases where the mother of the child has been married during conception and birth, estoppel includes the idea that the husband is presumed to be the father of the child, regardless of his true biological status, unless the person challenging this presumption is able to establish that the husband did not have sexual access to the mother of the child or was impotent during the period of conception.[6] If the relationship between the husband and wife is that they live together and have raised the child as a family unit, the presumption of husband's parentage will be absolute and not open to challenge by the third party. *John M. v. Paula T.*, 524 Pa. 306, 571 A.2d 1380 (1990), explained in *Jones v. Trojak*, 535 Pa. at 106, 634 A.2d at 206. If the relationship between husband and wife is such that they have repudiated their marriage vows, although they may be living together after the child was born, as in *Trojak*, there is no intact family

In these cases, it is recognized that, under certain circumstances, a person might be estopped from challenging paternity where that person has by his or her conduct accepted a given person as father of the child. The classic example of this principle is where a man who has lived with a woman and her children for a number of years and has held himself to the world as the father of said children, may be estopped from seeking court-ordered blood tests in a belated attempt to deny paternity.... These estoppel cases indicate that where the principle is operative, blood tests may well be *irrelevant*, for the law will not permit a person in these situations to challenge the status which he or she has previously accepted.

6. In *John M. v. Paula T.*, 524 Pa. at 322, 571 A.2d at 1388 (1990) this court stated:

[I]t should remain clear that a child born to a married couple will be presumed to be the issue of the husband. That presumption can be overcome only by proof of facts establishing non-access or impotency.... It continues to be one of the strongest presumptions within our law.

Concurring opinion of Mr. Chief Justice Nix, joined by all other members of the court, including the majority opinion writer.

to protect, and the analysis then encompasses both marital and non-marital considerations, as it did in *Trojak.*

We decide today to extend the rule of *Trojak* allowing an appeal from the order of blood tests because the ordering of blood tests is one of the most significant events in a paternity case. Not only is the child's equanimity threatened and the family unity invaded, as we observed in *Trojak,* but also, for all practical purposes, the results of the tests very often control the case. Significant interests of the parties other than the child, therefore, are affected, and these interests, as well as the child's interests, must be considered. Blood test orders accompanied by claims of estoppel, therefore, generally should be appealable, not only in cases in which the mother was married, as in *Trojak,* but in any case. Otherwise, appeals of blood test orders would be allowed in "married" cases under *Trojak,* but not in "unmarried" cases. Such a result could give rise to serious equal protection concerns, for although unique presumptions are involved where the mother was married when the child was conceived and born, the presumption of parentage in a "married" case is merely a form of estoppel, and estoppel may be raised both in cases in which there was no marriage and also in cases in which a child was conceived and born during the marriage.

We hold, therefore, that in any child support matter in which paternity is denied on the grounds of estoppel, the trial court must conduct a hearing on the issue of estoppel and determine whether the mother is estopped from pursuing her claim against the alleged father. Should the trial court decide the issue adversely to the alleged father, the alleged father may appeal this decision even though it is interlocutory and even though the mother has never been married.[7]

Applying this holding to the present case, it was error for Superior Court to quash Freedman's appeal from the order requiring blood tests, for he was entitled to appeal this

7. It is equally true, of course, that if the trial court should determine that blood tests are not permitted because the mother is estopped from pursuing her claim against the defendant, she may appeal that determination to Superior Court.

order regardless of the marital status of McCandless, but the error was harmless. We have independently reviewed the record of the estoppel hearing and have concluded that Superior Court was correct in its determination that McCandless supplied sufficient evidence to defeat the defense of estoppel.[8] Therefore, we affirm Superior Court's order concerning the blood test order.

Concerning Freedman's appeal of the support order, among the claims made are that he was denied due process when the trial court gave notice that it would conduct a hearing on contempt (because he had failed to attend the court-ordered appointment for blood tests), but then, in his absence, entered an order at the contempt hearing establishing paternity in the case.[9]

Although 23 Pa.C.S. § 5104 [10] provides that if a litigant refuses to submit to blood tests, the court may resolve the question of paternity against him, in order to make the finding that a party refused to take the tests, the trial court must

8. McCandless testified that before her child was born she had sex with Haxall perhaps four times; that when Haxall learned she was pregnant, he advised her to get an abortion; that although she resumed a sexual relationship with Haxall following the birth of her child, she and Haxall neither lived nor travelled together except for two occasions during which the two adults and the child went out to dinner. She admitted that she believed the child was Haxall's and that she, Haxall and the child travelled to Haxall's parents to allow them to see the child whom they believed to be their grandchild. She stated that she was "devastated" when she discovered Haxall was not the child's father. In short, it is apparent that the lower courts evaluated this testimony as indicating that while McCandless and Haxall believed the child to be his, McCandless and Haxall did not conduct themselves in a manner consistent with Haxall's holding himself out as the father. We concur in that evaluation.

9. Freedman also asserts that the trial court was without jurisdiction to adjudicate paternity during the pendency of his appeal to Superior Court and that he should not have been required to file post-trial motions to the adjudication of paternity. Because of our disposition of the case, we need not address these claims.

10. 23 Pa.C.S. § 5104(c) provides in pertinent part:

If any party refuses to submit to the tests, the court may resolve the question of paternity, parentage or identity of a child against the party or enforce its order if the rights of others and the interests of justice so require.

determine through a hearing or an admission that the alleged father refused to take blood tests. By failing to attend the contempt hearing, Freedman plainly risked contempt sanctions and possibly arrest, but he did not, under any view of due process, risk the adjudication of any matter of which he had no notice. He had no notice that paternity was an issue in a contempt hearing. The trial court's paternity determination, therefore, was made without proper notice, and was void. It was error for Superior Court to remand for hearings on support while leaving in place the determination of paternity.

Accordingly, Superior Court's order with respect to blood tests is affirmed. Although it was error to quash the appeal, Superior Court's review of the record, concluding that it was not error for the trial court to order the parties to submit to blood tests (i.e., there was no estoppel), was correct.

However, Superior Court's order of remand is vacated insofar as it affirms the trial court's determination of paternity, since that order was improperly entered. The trial court is directed to conduct a hearing on the issue of whether Freedman refused to submit to blood tests, and to proceed thereafter in a manner consistent with the requirements of law.[11, 12]

11. The posture of the case on this remand is that the order for blood tests has been affirmed and Freedman has not complied. Presumably, the issue of contempt remains viable. Because the finding of paternity is vacated pursuant to this appeal, there is no need for a de novo hearing (as required by Superior Court) on any support order which may have been entered, for there can be no valid support order without a finding of paternity. The trial court has already conducted hearings on the matter of alleged improper commingling of prosecutorial and adjudicative functions, as was required by Superior Court, and has determined that there was no impropriety. All that remains, then, is to adjudicate the issue of contempt, give Freedman the opportunity to submit to blood testing, make a finding as to paternity, and, if appropriate, enter an order of support.

12. Freedman's claim that his constitutional right to an independent tribunal was violated because of an improper commingling of adjudicative and adversarial functions by counsel for McCandless has not yet been considered by Superior Court. For that reason and because the case may be finally adjudicated on this remand, the matter is not ripe for consideration by this court.

Affirmed in part and vacated and remanded in part.[13]

PAPADAKOS, J., did not participate in the decision of this case.

ZAPPALA, J., concurs in the result.

MONTEMURO, J., is sitting by designation.

13. Freedman also argues that the plaintiff should be required to meet minimum threshold requirements before obtaining a court order for blood testing pursuant to 23 Pa.C.S. § 5104(c). The statute requires, inter alia, that paternity be a "relevant fact" in the proceeding. Ms. McCandless testified that she had sexual relations with Freedman during the relevant period, an assertion which the trial court apparently believed, thus making paternity a "relevant fact" within the meaning of the statute. Moreover, a parallel statute, 23 Pa.C.S. § 4343, concerning actions to determine paternity, provides that genetic testing shall be ordered "upon the request of any party to an action to establish paternity." The claim is meritless.

Finally, Freedman claims that McCandless is bound by admissions which result from her failing to deny allegations (that Freedman is not the father) in certain of Freedman's pleadings. This claim too is *without merit.* Pleading *in actions for support* has been simplified purposely and streamlined as the comment to Pa.R.C.P. 1910.7 states:

The pleading required by the rules is minimal. Only one pleading is required, the complaint. The technicalities of pleading are avoided by providing a form of complaint in Rule 1910.26(a).

There is no requirement under the rules governing actions for support that McCandless deny any of Freedman's allegations by way of pleadings.