741 A.2d 721

**Ruth FISH, Appellant,**

v.

**Robert BEHERS, Jr., Appellee.**

Supreme Court of Pennsylvania.

Submitted Sept. 22, 1998.

Decided Dec. 3, 1999.

524

Carol L. Hanna, Bethel Park, Scott W. Spadafore, Monongahela, for Ruth Fish.

Richard F. Welch, Michael E. Fiffik, Pittsburgh, for Robert Behers.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

*OPINION OF THE COURT*

CASTILLE, Justice.

The presumption of paternity and the theory of estoppel and their application are the issues before this Court in this appeal. In accordance with our decision in *Brinkley v. King,* 549 Pa. 241, 701 A.2d 176 (1997), we hold that the presumption of paternity is inapplicable under the facts of this case. However, because we agree with the Superior Court that appellant is estopped from asserting that appellee is the father of her child, we affirm the decision of the Superior Court.

Appellant's son was born on June 2, 1989, at which time appellant was married to David Fish. At the time of the child's conception, appellant was involved in an extramarital affair with appellee and had ceased having sexual relations with her husband. Early in the pregnancy, appellant told appellee that he was the father of her child and that she planned to have an abortion, and he persuaded her not to abort.

When appellant's son was born, appellant and her husband were still married, and she did not inform him that he was not the child's father. Appellant listed her husband as the father on the child's birth certificate. Appellant, her husband, the child, and the couple's two older children continued to live as an intact family for the next three years, during which time the husband treated the child as his son. He supported the child emotionally and financially and claimed the child as a dependent on the couple's joint income tax returns. At times, he expressed doubt whether he was the child's father, but appellant assured him that he was the father. In June of 1992, when the boy was three years old, appellant finally revealed to her husband that he had not fathered the child. He requested blood tests which revealed that he was not the child's biological father. Two months later, in August of 1992, he left the marital residence and filed a divorce action. Appellant and her husband were divorced in December of 1993, at which time they entered into an agreement whereby the

husband would support the couple's two older children but not the son.[1]

On April 29, 1994, appellant filed the instant child support action against appellee. Appellee filed preliminary objections, arguing that appellant must overcome the presumption that her husband was the child's father before blood testing could be ordered and that appellant was estopped from asserting that he was the child's father because she held her husband out as the father for the first three years of the child's life. On June 30, 1994, the trial court ordered the matter to a hearing before a hearing officer on the issue of estoppel. On September 7, 1994, the hearing officer found that appellant was not estopped from proceeding with a support action against appellee. On May 9, 1995, the trial court affirmed. On appeal, the Superior Court reversed and held that appellant was estopped from asserting that appellee was the child's father.[2]

In *Brinkley v. King*, 549 Pa. 241, 250, 701 A.2d 176, 180 (1997), this Court set forth the analysis required to determine the paternity of a child conceived or born during a marriage:

[T]he essential legal analysis in these cases is twofold: first one considers whether the presumption of paternity applies to a particular case. If it does, one then considers whether the presumption has been rebutted. Second, if the presumption has been rebutted or is inapplicable, one then questions whether estoppel applies. Estoppel may bar either a plaintiff from making the claim or a defendant from denying paternity. If the presumption has been rebutted or

1. In October of 1992, the husband filed a support action against appellee alleging that appellee was the child's father. The trial court dismissed the action, finding that the husband was estopped from claiming that appellee was the father's child because, despite suspicions that he did not father the child, he continued to raise and treat the child as his own. The husband did not appeal.

2. The Superior Court also declared the agreement between appellant and her husband providing that the husband would support only the couple's two older children and not this child to be a nullity because parents may not bargain away the rights of their children. *See Nicholson v. Combs*, 550 Pa. 23, 34, 703 A.2d 407, 412 (1997). We agree with this conclusion.

does not apply, and if the facts of the case include estoppel evidence, such evidence must be considered.

Hence, we must first determine if the presumption of paternity applies to the instant case. The policy underlying the presumption of paternity is the preservation of marriages. The presumption only applies in cases where that policy would be advanced by the application; otherwise, it does not apply. *Id.* at 250–51, 701 A.2d at 181. In this case, there is no longer an intact family or a marriage to preserve. Appellant and her husband have been divorced since December of 1993. Accordingly, the presumption of paternity is not applicable.

Having concluded that the presumption is inapplicable, we must turn to a determination of whether appellant is estopped from asserting appellee's paternity. A party may be estopped from denying the husband's paternity of a child born during a marriage if either the husband or the wife holds the child out to be the child of the marriage. *See, e.g., John M. v. Paula T.,* 524 Pa. 306, 319–20, 571 A.2d 1380, 1387 (1990). In *Freedman v. McCandless,* 539 Pa. 584, 591–92, 654 A.2d 529, 532–33 (1995), we stated:

> Estoppel in paternity actions is merely the legal determination that because of a person's conduct (e.g., holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father. As the Superior Court has observed, the doctrine of estoppel in paternity actions is aimed at "achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding the paternity of the child."

In *Jones v. Trojak,* 535 Pa. 95, 105–06, 634 A.2d 201, 206 (1993), this Court discussed the issue of estoppel where the mother of a child sought support from a third party, not her husband, whom she claimed was the father of the child:

[U]nder certain circumstances, a person might be estopped from challenging paternity where that person has by his or her conduct accepted a given person as the father of the child. *John M. [v. Paula T.]*, 524 Pa. at 318, 571 A.2d at 1386. These estoppel cases indicate that where the principle is operative, blood tests may be irrelevant, for the law will not permit a person in these situations to challenge the status which he or she has previously accepted. *Id.* However, the doctrine of estoppel will not apply when evidence establishes that the father failed to accept the child as his own by holding it out and/or supporting the child.

■ Here, appellant continually assured her husband that he was the child's father, she named him as the father on the child's birth certificate, the child bears the husband's last name, the child was listed as a dependent on the couple's income tax returns, and the child was otherwise treated as a child of the marriage which remained intact until three years after the birth of the child when appellant informed her husband that he did not father the boy. The child continues to believe that the husband is his father, and the husband, during the child's first three years of life, formed a father-son relationship with the child. Following appellant's separation from her husband and continuing at least until the September 1994 hearing on the issue of estoppel (at which time the child was five years old), he continued to treat all three of her children equally, and appellant and her husband continued to hold the child out to the community as the child of their marriage. This evidence amply shows that appellant and her husband accepted the husband as this child's father and does not indicate that the husband failed, during the marriage, to accept the child as his. Thus, the doctrine of estoppel applies.

■ The father-son relationship with appellant's husband is the only such relationship this child has known. The alternative—forcing the child into a relationship with appellee, a man whom he does not know—is not in the best interests of this child. As this Court stated in *Brinkley,* 549 Pa. at 249–50, 701 A.2d at 180:

Estoppel is based on the public policy that children should be secure in knowing who their parents are. If a certain person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father he has known all his life is not in fact his father.

Accordingly, appellant, due to her conduct, is estopped from asserting that appellee is the child's father.

The decision of the Superior Court is affirmed.

Justice SAYLOR did not participate in the consideration or decision of this matter.

Justice NIGRO files a dissenting opinion which is joined by Justice NEWMAN.

Justice NEWMAN files a dissenting opinion.

NIGRO, Justice, dissenting.

Since I disagree with the majority's conclusion that Appellant Ruth Fish (Mother) is estopped from asserting that Appellee Robert Behers is her son Z.F.'s father, I respectfully dissent. Instead, I believe the trial court properly ordered Mr. Behers to submit to blood tests for purposes of determining Z.F.'s paternity.

As I explained in my concurring and dissenting opinion in *Brinkley v. King*, 549 Pa. 241, 701 A.2d 176 (1997), I believe that strictly applying the doctrine of paternity by estoppel, as the majority does here, leads to illogical and inequitable results. The majority concludes that Mother is estopped from challenging her former husband's paternity and pursuing a paternity and child support action against Mr. Behers essentially because 1) Mother continually assured her former husband, David Fish, that he was Z.F.'s father; 2) Mother named Mr. Fish as the father on Z.F.'s birth certificate; 3) Z.F. bears Mr. Fish's last name; 4) Z.F. was listed as a dependent on Mother and Mr. Fish's tax returns; 5) Z.F. was otherwise treated as a child of the marriage between Mother and Mr. Fish while it was intact and 6) Z.F. continues to believe that

Mr. Fish is his father. Most of these circumstances occurred, however, during a time in which Mr. Fish was being led to believe, falsely, that he was Z.F.'s father. When Mother ultimately revealed the truth of Z.F.'s paternity to Mr. Fish, Mr. Fish obtained blood tests, which confirmed that he was not Z.F.'s father.

By invoking the estoppel doctrine, the majority allows itself to completely disregard these blood test results and find that Mother is estopped from claiming that Mr. Fish is not the father of a child who can not, according to the blood test results, be his. At the same time, by applying the estoppel doctrine, the majority effectively prohibits compelling Mr. Behers to submit to blood tests, as the trial court ordered, despite the fact that all indications from the record suggest that Mr. Behers is Z.F.'s father and was aware of Mother's misrepresentations to Mr. Fish about Z.F.'s paternity. This situation is a perfect example of why I believe that our courts should abandon the strict application of the estoppel doctrine and grant trial courts the discretion to order paternity blood tests and then consider such evidence along with other factors relevant to the best interests of the child involved.[1] Such an approach would not only prevent biological fathers from using the estoppel doctrine as a vehicle for insulating themselves from parental responsibilities but would also, as I stated in *Brinkley:*

> work to eliminate situations where a man is deceived into believing he is the father and is then made to bear legal

1. The majority finds that Mr. Fish continues to treat all three of his children equally (Mother and Mr. Fish had two children together before Z.F. was born) and concludes that forcing Z.F. into a relationship with Mr. Behers, when the only father he has known is Mr. Fish, would not be in Z.F.'s best interests. I note that the trial court explicitly found that Mr. Fish, since learning that Z.F. is not his child and leaving the marriage, has "had little contact with [Z.F.] and does not support him financially or emotionally." Trial Court Opinion at 3. Moreover, the trial court specifically found that estoppel would not be in Z.F.'s best interests, as Mother testified that she plans to tell Z.F. the truth of his paternity on the advice of a psychologist that it is in the best interests of Z.F. to do so.

responsibility, by reason of estoppel, for a child that is not his.

*Brinkley,* 549 Pa. at 254, 701 A.2d at 182.

Since this is the exact effect of the result reached by the majority in this case, I must respectfully dissent.

NEWMAN, Justice, dissenting.

I join Justice Nigro's Dissenting Opinion. I write separately only to emphasize my view that the presumption of paternity is rebuttable and does not prohibit the court from ordering Mr. Behers to submit to paternity tests.[1] Equally, the doctrine of estoppel should not bar these tests.

1. As we set forth in *Brinkley,* the presumption does not attach because the marriage is not intact, and there is no marriage to preserve. *Brinkley v. King,* 549 Pa. 241, 250, 701 A.2d 176, 180 (1997).