DEL SOLE, President Judge.
¶ 1 R.W.L. appeals from an order, entered after an evidentiary hearing, finding that Appellee D.L.H. is not estopped from pursuing a child support action against Appellant. For the reasons set forth below, we quash the appeal.
¶2 Appellee filed a support complaint alleging that Appellant is the father of her son, who was born on August 24, 1989. The parties submitted to blood tests which showed a 99.58% likelihood that Appellant is the child’s biological father. The court scheduled a support conference. Appellant then filed a motion to continue the support conference and schedule an immediate hearing on estoppel. The court held an estoppel hearing and thereafter entered the order presently on appeal.
¶ 3 Ordinarily, this Court has jurisdiction only of appeals from final orders. 42 Pa.C.S.A. § 742. In a support case, the final order is the order directing payment of support or dismissing the support complaint. Williams v. Williams, 253 Pa.Super. 444, 385 A.2d 422 (1978); Pa. R.C.P.1910.15(f) (order establishing paternity is not appealable as issue may be included in appeal from the final order of child support).
¶ 4 In support cases where paternity is denied, our Supreme Court has set forth one clear exception to this rule. In Jones v. Trojak, 535 Pa. 95, 634 A.2d 201 (1993), the Court held that court-ordered blood tests to determine paternity are appealable even though they are interlocutory. Appellant herein did not however appeal the order for blood tests but rather submitted to the blood tests apparently without complaint.
*1159 ¶ 5 Thus the critical question becomes whether an order holding that a party is not estopped from pursuing a support claim but not ordering blood tests is ap-pealable absent a final order determining paternity and calculating the support obligation. In support of his claim that this order is appealable, Appellant relies on Freedman v. McCandless, 539 Pa. 584, 654 A.2d 529 (1995). In Freedman, the Supreme Court reaffirmed the principle that an appeal from an order directing blood tests is appealable even in a situation where the mother and alleged presumptive father were never married. In the course of its discussion, the Court stated that where paternity is denied on the grounds of estoppel,
the trial court must conduct a hearing on the issue of estoppel and determine whether the mother is estopped from pursuing her claim against the alleged father. Should the trial court decide the issue adversely to the alleged father, the alleged father may appeal this decision even though it is interlocutory and even though the mother has never been married.[7]
Id. at 533-34.
¶ 6 We find Freedman distinguishable from the present case. The order appealed in Freedman was an order to submit to blood tests. This Court quashed that appeal and the appellant then appealed to the Supreme Court. The Supreme Court stated in that case that allocatur was granted “to address the appealability of blood test orders and to consider whether the trial court’s determination of paternity was conducted in a manner violative of due process.” Id. at 532 (emphasis added). Thus the issue set forth in Freedman was whether an order directing blood tests is immediately appealable.[1] At the trial level, the court first held a hearing on estop-pel. After that hearing, the trial court entered an order that the mother was not estopped from bringing an action for support and ordered the parties and the child to submit to blood tests. Here, the parties and child submitted to the blood tests pri- or to the hearing on estoppel. Significantly, Appellant did not appeal the order directing blood tests.
¶ 7 More importantly, we find the reasoning underlying the decision to allow an immediate appeal from an order directing blood tests does not apply in the present case. That rationale was originally set forth in Jones v. Trojak, 535 Pa. 95, 634 A.2d 201 (1993) and reiterated in Freedman.
Our concern is that once a party to a paternity action submits to a blood test, the psychological and moral damage will have been done, the family unit will have been intruded upon, and, most importantly, the child will have been scarred from the mental stress and the social stigma associated with having the identity of his or her parents investigated. Restated, this Court’s concern is that the potential negative ramifications of a blood test on the child are irreversible.
*1160 Freedman, 654 A.2d at 532, quoting Jones v. Trojak, 634 A.2d at 205 (emphasis added). Clearly, the concern that led the Supreme Court to allow the immediate appeal of a blood test order was the effect on the child. Such a concern is not present where the order does not direct blood tests which is the case here.
¶ 8 Our research has not revealed any case in which an order similar to the one in the instant appeal was determined to be an immediately appealable order. In Fish v. Behers, 559 Pa. 523, 741 A.2d 721 (1999), for example, the issue was before the Court in an appeal from an order determining paternity and ordering support. See also Miscovich v. Miscovich, 455 Pa.Super. 437, 688 A.2d 726 (1997); Paulshock v. Bonomo, 443 Pa.Super. 409, 661 A.2d 1386 (1995); Zadori v. Zadori 443 Pa.Super. 192, 661 A.2d 370 (1995). Only where the order either directed or denied blood tests, as in Freedman and Jones, has an immediate appeal been allowed. We conclude therefore that, because the reasoning behind allowing such an immediate appeal from an order directing or denying blood tests does not apply when the parties have previously submitted to blood tests without complaint, a subsequent order denying estoppel is not appealable. We therefore quash this appeal.
¶ 9 Appeal quashed.

 It is equally true, of course, that if the trial court should determine that blood tests are not permitted because the mother is es-topped from pursuing her claim against the defendant, she may appeal that determination to Superior Court.

. Also, in the footnote of the above passage, the Court notes that if the trial court refuses to order blood tests, the mother may appeal that decision as well. Thus, the Court’s language in that passage appears to equate the two determinations of estoppel and blood tests. Indeed the more logical procedure seems to be the procedure followed in Freedman, i.e., holding a hearing on estoppel before deciding whether blood tests should be ordered.