**Sharon DIPAOLO, Appellant**

v.

**Francis CUGINI, Appellee.**

Superior Court of Pennsylvania.

Submitted Sept. 3, 2002.

Filed Nov. 20, 2002.

Anita N.A. Botchway, Philadelphia, for appellant.

Frank A. Gerolamo, Philadelphia, for appellee.

Before: HUDOCK, JOYCE and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 Petitioner Sharon DiPaolo appeals from the March 6, 2002 Order denying her motion for genetic testing of the respondent/appellee Francis Cugini and dismissing her complaint for support. We affirm.

¶ 2 Appellant and her husband Michael DiPaolo were married in 1982, and on March 30, 1994, appellant gave birth to twin boys. At the time of conception and birth of the boys the DiPaolo family resided in Pennsylvania. When the twins were eight months old, the DiPaolos separated and appellant and the children moved to

North Carolina where they resided briefly before moving to New Jersey where they now reside.[1] From their March 30, 1994 date of birth until February 2000, husband held the twins out as his own, financially supporting them, providing their health insurance and claiming them as dependents.

■ ¶ 3 In February 2000, however, the state of New Jersey granted husband's request for genetic testing. DNA tests excluded husband as the biological father of the twins, and on June 12, 2000, the Superior Court of New Jersey entered a Consent Order in which, *inter alia*, appellant *agreed* to the voluntary termination of husband's parental rights.[2] Divorce proceedings thereafter were commenced by husband.[3]

¶ 4 Almost one year later, on April 11, 2001, pursuant to the Uniform Interstate Family Support Act,[4] 23 Pa.C.S. § 7301 *et seq.*, and on behalf of appellant, the state of New Jersey filed a complaint for support against the appellee, Francis Cugini, a resident of Pennsylvania and the man with whom, in addition to her husband, appellant averred she had been having sexual relations at the time the twins were conceived. The complaint also sought to establish paternity.

¶ 5 On May 24, 2001, a pretrial conference was conducted at which time appellee contested the establishment of paternity as the twins were born during wedlock. Following two continuances due to appellant's failure to appear, a hearing was held on November 26, 2000, and appellant, who participated via telephonic testimony, made an oral motion for genetic testing. The court requested briefs, and on March 6, 2002, the court entered the Order denying appellant's petition for genetic testing and support. This timely appeal followed.

¶ 6 Appellant raises two issues for this Court's consideration:

I. Whether the Full Faith and Credit Clause of the United States Constitution Article 4 Section 1, precludes the application of the doctrine of paternity by estoppel in this case?

II. Whether the trial court erred in ruling that appellant is estopped from denying her husband's paternity of her twin boys where the evidence is insufficient to support such a finding, and where the trial court manifestly abused its discretion?

Appellant's brief at 2. We will address the issues seriatim.

■ ¶ 7 The clause of the United States Constitution on which appellant relies in support of her first issue does require

---

1. There are two additional children of the marriage, the paternity of whom is unchallenged.

2. The agreement and consent to voluntary termination of the husband's parental rights and to be relieved of support payments for the twins, while continuing to support the other children of the marriage, is a nullity pursuant to Pennsylvania law as parents may not bargain away the rights of their children. *Nicholson v. Combs*, 550 Pa. 23, 34, 703 A.2d 407, 412 (1997).

3. To date there is no indication a divorce decree has been entered.

4. The Uniform Interstate Family Support Act, 23 Pa.C.S. § 7303, **Application of law of this State**, reads:

Except as otherwise provided by this part, a responding tribunal of this State:
(1) shall apply the procedural and substantive law, including the rules on choice of law, generally applicable to similar proceedings originating in this State and may exercise all powers and provide all remedies available in those proceedings; and
(2) shall determine the duty of support and the amount payable in accordance with the law and support guidelines of this State.

Pennsylvania to give full faith and credit to the Consent Order entered in New Jersey provided it is founded upon adequate jurisdiction of the parties and the subject matter. That fact standing alone, however, does not lend convincing support to appellant's argument. Paragraph one of the Order in question states, "Plaintiff [appellant] agrees to voluntary termination of the defendant's [husband's] parental rights as to the twin boys, Anthony and Andrew, due to DNA testing having excluded the defendant as a biological parent." Attached to this Order are the results of the DNA testing excluding husband as biological father of the twins. The remainder of the June 12, 2000 Consent Order addresses husband's obligations and rights pertaining to the other two children of the marriage, the paternity of whom is not challenged. The Order does not establish paternity as to appellee; moreover, appellee was not a party to the New Jersey Order. Appellant's first argument necessarily fails.

▆▆▆▆ ¶ 8 Appellant also argues the trial court did not take into consideration the children's best interest when it ruled she was estopped from arguing the twins are not children of the marriage. Our Supreme Court addressed a very similar issue in *Fish v. Behers*, 559 Pa. 523, 741 A.2d 721 (1999), wherein the Court held mother was estopped, despite blood tests excluding husband as natural father, from suing a third party for support of children born during the marriage and held out by both parents as their own. In its Opinion, the *Fish* Court relied upon the plurality reasoning of *Freedman v. McCandless*, 539 Pa. 584, 591–592, 654 A.2d 529, 532–533 (1995), as it pertained to estoppel:

> Estoppel in paternity actions is merely the legal determination that because of a person's conduct (e.g., holding out the child as his own, or supporting the child)

that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother be permitted to sue a third party for support, claiming that the third party is the true father. As the Superior Court has observed, the doctrine of estoppel in paternity actions is aimed at "achieving fairness between the parents by holding them, both mother and father, to their prior conduct regarding the paternity of the child."

*Id.* We find, based on this reasoning, and despite husband's exclusion as the biological father, appellant is precluded from pursuing a third party for support.

¶ 9 Appellant herein testified she and her children lived with her husband for eight months after the boys' birth, and for almost six years following the twins' birth she and husband held the children out as children of the marriage. Husband supported the boys financially and emotionally. Husband was not a mere name on the birth certificate; rather he was the boys' *de facto* if not *de jure* father. Appellant's emotional argument that the court's ruling has left the children "fatherless," (appellant's brief at 7), has not gone unconsidered, but the fact remains it was she who voluntarily consented to the termination of husband's parental rights, encompassing legal rights and obligations which very well may not have been judicially terminated given the legal principle of estoppel. *See Freedman, supra.* Also see footnote 2.

▆▆▆▆ ¶ 10 Having found appellant's arguments devoid of merit, we affirm the Order denying appellant's petition for genetic testing and her complaint for support.[5]

¶ 11 Order affirmed.

¶ 12 Dissenting Opinion by HUDOCK, J.

---

**5.** While we decide this case with reference to

the estoppel doctrine because it appears this

HUDOCK, J., dissenting:

¶ 1 Respectfully, I dissent. The majority correctly concludes that under Pennsylvania law Appellant's husband would be estopped from denying parentage of the twins at issue here. In Pennsylvania, under these circumstances, genetic testing would not have been ordered. However, since the Appellant and her husband resided in New Jersey, New Jersey granted husband's request for genetic testing, which excluded husband as the biological father of the twins. I disagree with the majority that Appellant should also be precluded from pursuing the Appellee as the father of the children.

¶ 2 In *Brinkley v. King*, 549 Pa. 241, 701 A.2d 176 (1997), our Supreme Court discussed the underlying rationale for the estoppel doctrine.

Estoppel is based on the public policy that children should be secure in knowing who their parents are. If a certain person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father he has known all his life is not in fact his father.

*Brinkley*, 549 Pa. at 249–50, 701 A.2d at 180.

¶ 3 Since the action of the New Jersey court has destroyed any father/child relationship with these children, the children are not secure in knowing who their parents are, and the public policy considerations underpinning the doctrine of estoppel are not existent. The doctrine of paternity by estoppel is not designed to protect the real father from shouldering

his financial responsibility to his children. The result of the majority opinion in this case exemplifies the danger envisioned by Justice Nigro in his dissenting opinion in *Fish v. Behers*, 559 Pa. 523, 741 A.2d 721 (1999), where he stated:

This situation is a perfect example of why I believe that our courts should abandon the strict application of the estoppel doctrine and grant trial courts the discretion to order paternity blood tests and then consider such evidence along with other factors relevant to the best interests of the child involved. Such an approach would … prevent biological fathers from using the estoppel doctrine as a vehicle for insulating themselves from parental responsibilities …

*Id.*, 559 Pa. at 531, 741 A.2d at 725.

¶ 4 Under the circumstances of this case, I believe genetic testing should have been allowed and, accordingly, I dissent.

---

is no longer an intact family, *see Fish, supra,* we recognize the continuing viability of the presumption that "a child born to a married couple will be presumed to be the issue of the husband. That presumption can only be overcome by proof of facts establishing non-

access or impotency. It continues to be one of the strongest presumptions within our law." *John M. v. Paula T.*, 524 Pa. 306, 322, 571 A.2d 1380, 1388 (1990) (citation omitted) (Nix, C.J. concurring), *cert. denied*, 498 U.S. 850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990).