J-A19027-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| KACIE DAVIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DEREK LYNWOOD | : | |
| | : | |
| Appellant | : | No. 112 MDA 2022 |

Appeal from the Order Entered November 23, 2021
In the Court of Common Pleas of Lackawanna County
Domestic Relations at No(s): 13 DR00615

BEFORE: BOWES, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:           **FILED SEPTEMBER 23, 2022**

Appellant, Derek Lynwood, appeals from the order entered in the Lackawanna County Court of Common Pleas, denying his request to terminate paternity. For the following reasons, we reverse.

The relevant facts and procedural history of this case are as follows. On June 27, 2013, Appellee, Kacie Davis, filed a complaint for child support against Appellant, alleging Appellant was the biological father of her child ("Child"), born in June 2013. On July 8, 2013, the court ordered the parties to appear for a hearing scheduled on July 30, 2013. The order scheduling the hearing expressly stated that if paternity is an issue, the court shall enter an order establishing paternity at the hearing. The court subsequently

---

[*] Former Justice specially assigned to the Superior Court.

rescheduled the hearing for September 26, 2013. The order rescheduling the hearing contained the same language regarding establishing paternity. Appellant did not appear at the hearing, and the court entered an order that day, naming Appellant as the biological father and ordering him to pay $100.00/month in child support.

Between 2013 and 2021, Appellant failed to pay support as ordered. Following various contempt petitions against Appellant for failure to pay support, and Appellant's failure to attend scheduled hearings for those petitions, the court entered orders of attachment on Appellant's wages and unemployment compensation benefits to pay the required support.

On February 26, 2021, Appellant filed a petition for modification of the support order, claiming he was not the biological father of child. Appellant requested DNA testing, stating: "I don't believe that [Child] is mine. Because I never got a DNA test done or paperwork for it." (Petition for Modification, filed 2/26/21, at 2) (unnecessary capitalization omitted). Appellant subsequently underwent DNA testing, which stated there was a 0% probability of paternity. On May 4, 2021, the court suspended the support order based on the DNA results and directed Appellant to file a petition to terminate paternity.

Thereafter, Appellant filed a "petition to schedule a hearing for the purpose of terminating paternity." In it, Appellant claimed that Appellee had informed the Domestic Relations section that Appellant was the biological

father of Child, even though Appellee knew that was false. Appellant claimed he had denied paternity since Child's birth but was not authorized to take a DNA test until April 2021. Appellant emphasized that the results of the DNA test confirm he is not Child's father. Appellant requested that the court terminate and disestablish paternity. Appellant further asked for reimbursement of any support payments made.

Appellee filed a response, denying that she falsely informed the Domestic Relations section that Appellant was Child's father. Appellee claimed she had a sexual relationship with Appellant in October 2012, and Child was born in June 2013. Appellee alleged that Appellant acknowledged that he was the father until Child's birth, at which point he began to deny paternity. Appellee emphasized that Appellant was ordered to take a paternity test on September 26, 2013 (the date of the original support hearing), but Appellee failed to appear resulting in the "presumption of paternity."[1] Appellee maintained that Appellant should be estopped from challenging paternity almost eight years after he failed to show up for the original paternity test. Notwithstanding the test results, Appellee alleged Appellant is Child's father under the doctrine of paternity by estoppel. Appellee further contended the record is devoid of any evidence of fraud or mutual mistake. Appellee insisted

---

[1] An order expressly scheduling a paternity test is not in the certified record. The July 8, 2013 and July 30, 2018 orders scheduling hearings on Appellee's support complaint did not specify that a paternity test would be performed at the hearing.

- 3 -

that Child has become accustomed to the financial support provided by Appellant, and it is in her best interest for Appellant to continue to pay child support.

The court held a hearing on July 8, 2021. Appellant testified that he was in a relationship with Appellee for approximately three years between 2008 and 2011. Around 2013, the parties reconnected and had sex. Appellant described the interaction as a "one night stand." Appellant claimed that immediately after the parties had sex, Appellee went to the bathroom, came downstairs, held out a pregnancy test and announced that she was pregnant with Appellant's child. Appellant said he "didn't pay any mind to it" because he did not believe Appellee. Appellant claimed he told Appellee that day he was not the father. Appellant left Appellee's home afterwards, went on with his life, and did not continue to see Appellee.

After Child's birth, Appellant said he kept receiving letters from the Domestic Relations section stating that he was Child's father, which Appellant knew was untrue. Appellant testified that he repeatedly called the Domestic Relations section to inform them he was not Child's father. Appellant further testified that he was living in Texas for about three months in 2013, and then in Georgia for about one month and a half, before returning to Pennsylvania. Appellant denied ever receiving a letter from the Domestic Relations section scheduling a paternity test shortly after Child's birth. Appellant emphasized he was out-of-state during this time. Even though Appellant told the Domestic

- 4 -

Relations section that he was not at Child's birth, did not fill out a birth certificate, and had never seen Child, Appellant claimed Domestic Relations kept "brushing it off."

Appellant said he only paid child support over the years because the court garnished his wages. Appellant said he repeatedly contacted his caseworker, Nicole Leonori, but she did not assist him in disputing paternity. Appellant maintained that he has had zero contact with Child since she was born, has never sought custody of Child, and has never held himself out as Child's father. Appellant testified that Appellee did not invite Appellant to the birth of Child or for any birthday parties or holidays.

In response to questioning about why Appellant waited so long to seek termination of paternity or genetic testing, Appellant said he was going through a mid-life crisis and trying to get his life together. Appellant testified that he did not know the best way to approach the situation, and he had never encountered a problem like this before in his life. Appellant maintained that it was not until he personally went into the Domestic Relations section about four months earlier that a different caseworker, Cathy McDonald, explained to him how to dispute paternity. (*See* N.T. Hearing, 7/8/21, at 6-30).

Appellee testified that she had a relationship with Appellant between 2008 and 2011, and then the parties separated. Appellee said she had a "one night stand" with Appellant around late October 2012/early November 2012. Appellee denied telling Appellant that he was the father of Child immediately

after they had sex. Appellee said she took a pregnancy test on November 7, 2012, which is the day before Appellee's birthday. Appellee claimed she told Appellant that he was the father around February 2013. At that time, Appellee said she called Appellant to come over to her house and told him she was pregnant with his child. Appellee showed Appellant the positive pregnancy test. Appellant said the parties should tell Appellee's mother, so Appellant and Appellee informed Appellee's mother about the pregnancy.

Appellee did not invite Appellant to attend Child's birth because he was "nowhere to be found" and Child was born one month early. Appellee said she did not put Appellant's name on the birth certificate because he was not present when Child was born. Appellee said she invited Appellant to her home sometime after February 2015 to spend time with Child. Appellee said she did not recall whether she had sex with anyone else around the time she had sex with Appellant in late 2012. Appellee claimed she does not know who Child's father could be if Appellant is not the father.

Appellee maintained that she appeared for the paternity test ordered in 2013, but Appellant did not appear. Appellee had no idea whether Appellant received notice of the scheduled paternity testing. Appellee claimed Appellant has seen Child twice. Appellee maintained that Child has relied on the support payments provided by Appellant for food and other basic needs. (*See id.* at 31-40).

The parties subsequently filed post-hearing briefs. By order entered on

November 23, 2021, the court denied Appellant's petition to terminate paternity on the basis of paternity by estoppel. Appellant filed a notice of appeal on January 3, 2022.[2]

Appellant raises the following issues on appeal:

> Did the trial court abuse its discretion and err as a matter of law in denying [Appellant's] petition to terminate

---

[2] We observe that Appellant filed his notice of appeal prematurely in this case because the appeal period was never triggered due to the absence of Pa.R.C.P. 236 notice entered on the docket. **See** Pa.R.C.P. 236(b) (stating: "The prothonotary **shall** note in the docket the giving of the notice…") (emphasis added). **See also** Pa.R.A.P. 108(b) (stating date of entry of order in matter subject to Pennsylvania Rules of Civil Procedure shall be day on which clerk makes notation in docket that notice of entry of order has been given as required under Rule 236(b)). Under these circumstances, we conclude there was a breakdown in the operations of the court. **See Smithson v. Columbia Gas of PA/NiSource**, 264 A.3d 755, 757 (Pa.Super. 2021) (explaining 30-day appeal period does not begin to run until prothonotary enters order on docket with required notation that it gave appropriate notice to counsel and unrepresented parties; "This failure to abide by the strict requirements of Rule 236 constitutes a breakdown in the operation of the trial court"). Nevertheless, we will regard as done which ought to have been done and treat the appeal as timely filed, *i.e.*, as if proper notice had been entered on the docket. **See, e.g., In re Adoption of K.A.F.**, Nos. 760, 761, & 762 WDA 2021 (Pa.Super. filed Feb. 8, 2022) (unpublished memorandum) (proceeding to merits review under similar circumstances in Children's Fast Track case). **See also** Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

We further note that because this case was designated a Children's Fast Track case, Appellant was required to file a concise statement of errors complained of on appeal contemporaneously with his notice of appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i). Because Appellant failed to do so, this Court issued an order on February 9, 2022, directing Appellant to file a concise statement of errors. **See In re Adoption of K.A.F., supra** (explaining that failure of appellant in Children's Fast Track case to file contemporaneously concise statement with notice of appeal does not divest this Court of jurisdiction but will result in defective notice of appeal). Appellant ultimately complied with this Court's directive.

paternity despite evidence that he was not the biological father?

Did the trial court abuse its discretion and err as a matter of law in determining that [Appellant] was estopped from denying paternity despite evidence that [Appellant] never held himself out as [f]ather of the minor child?

(Appellant's Brief at 4).

For purposes of disposition, we combine Appellant's issues. Appellant argues the parties had sexual intercourse on one occasion in the year preceding Child's birth, immediately after which Appellee claimed that Appellant was Child's father. Appellant avers that Appellee's pregnancy announcement shortly after they had sex is "scientifically impossible." (*Id.* at 9). Appellant insists that Appellee failed to reveal that she had other sexual partners around the time she had sex with Appellant in late 2012. Appellant submits that Appellee defrauded Appellant and the court for the last eight years. Appellant contends that neither Appellee nor the Domestic Relations section produced any proof that Appellant received notice of the scheduled paternity test in 2013. Appellant claims the Domestic Relations section ignored his assertions that he was not Child's father for almost eight years. Appellant maintains that Child does not know Appellant is her father, and Appellant has no relationship with Child. Appellant emphasizes that the genetic testing confirms he is not Child's father. Appellant concludes the trial court abused its discretion in denying his request to terminate paternity, and this Court must grant relief. We agree.

In reviewing matters of child support and cases involving a question of paternity, we will not disturb a trial court order absent an abuse of discretion. *Vargo v. Schwartz*, 940 A.2d 459, 462 (Pa.Super. 2007).

> An abuse of discretion exists if the trial court has overridden or misapplied the law, or if there is insufficient evidence to sustain the order. Moreover, resolution of factual issues is for the trial court, and a reviewing court will not disturb the trial court's findings if they are supported by competent evidence. It is not enough for reversal that we, if sitting as a trial court, may have made a different finding.

*Id.* (quoting *Doran v. Doran*, 820 A.2d 1279, 1282 (Pa.Super. 2003)).

Further:

> "The finder of fact is entitled to weigh the evidence presented and assess its credibility." *Smith v. Smith*, 904 A.2d 15, 20 (Pa.Super. 2006). In so doing, the finder of fact "is free to believe all, part, or none of the evidence and we as an appellate court will not disturb the credibility determinations of the court below." *Id.* (citation omitted).

*Vargo, supra*.

"The presumption of paternity, *i.e.*, the presumption that a child conceived or born during a marriage is a child of the marriage, …is one of the strongest presumptions known to the law." *Id.* at 463 (citation omitted). Because the policy underlying the presumption is the preservation of marriages, "the presumption of paternity applies **only** where the underlying policy to preserve marriages would be advanced by application of the presumption." *Id.* (emphasis in original). Thus, the presumption of paternity is not applicable when there is no longer an intact family or a marriage to preserve. *Id.* If the presumption of paternity is inapplicable, the court must

- 9 -

then consider whether the doctrine of paternity by estoppel applies to the facts

of the case. *Id.* at 464.

> "Generally, estoppel in paternity issues is aimed at achieving fairness as between the parents by holding both mother and father to their prior conduct regarding paternity of the child." *Buccieri v. Campagna*, 889 A.2d 1220, 1224 (Pa.Super. 2005) (quoting *Freedman v. McCandless*, 539 Pa. 584, 592, 654 A.2d 529, 533 (1995)). This Court has held that the principle of paternity by estoppel is well suited to cases where no presumption of paternity applies. *Gulla v. Fitzpatrick*, [596 A.2d 851, 858 (Pa.Super. 1991)]. The number of months or years a party held out another as the father of a child is not determinative of an estoppel claim. *Id.* "Rather, it is the nature of the conduct and the effect on the father and the child and their relationship that is the proper focus of our attention." *Id.*
>
> Estoppel has been used variously in cases involving paternity and support. *See, e.g., Fish v. Behers*, 559 Pa. 523, 741 A.2d 721 (1999) (holding as between mother and biological father, mother was estopped from asserting paternity of biological father, where she repeatedly assured her ex-husband that he was child's biological father); *Moyer v. Gresh*, 904 A.2d 958 (Pa.Super. 2006) (holding as between putative father and biological father, biological father was estopped from challenging paternity of putative father where putative father raised child for nine years); *Buccieri, supra* (holding biological father was estopped from asserting paternity due to eight-year delay in accepting any responsibility as parent); *J.C. v. J.S.*, 826 A.2d 1, 5 (Pa.Super. 2003)[, *appeal denied*, 576 Pa. 724, 841 A.2d 531 (2003)] (holding putative father was estopped from denying paternity because he continued to act as child's father after his paternity was disproved); *Gulla, supra* (holding as between mother and putative father, mother was estopped from denying paternity of putative father where she had held him out as child's father). Even in the context of a marriage, the principle of estoppel can be applied if fraud occurs. *See also Doran, supra* (holding husband was not estopped from denying paternity of child born during husband's marriage to mother, where she deceived him into believing he was child's biological father);

- 10 -

*Kohler*[ *v. Bleem*, 654 A.2d 569 (Pa.Super. 1995), *appeal denied*, 541 Pa. 652, 664 A.2d 541 (1995)] (holding biological father could not assert estoppel to prevent presumptive father from denying paternity, in light of conclusive evidence of paternity, fraud and misrepresentation on issue of true identity of biological father, and absence of intact family).

\* \* \*

"Estoppel in paternity actions is based on the public policy that children should be secure in knowing who their parents are…." *Gebler v. Gatti*, 895 A.2d 1, 3 (Pa.Super. 2006) (citing *Brinkley v. King*, 549 Pa. 241, 701 A.2d 176 (1997)). "The doctrine is designed to protect the best interests of minor children by allowing them to 'be secure in knowing who their parents are.'" *Moyer, supra* (internal citation omitted). The application of paternity by estoppel in any form is very fact specific and must be grounded in a close analysis of the circumstances of the case. *Gebler, supra* (citing *T.L.F. v. D.W.T.*, 796 A.2d 358, 363 (Pa.Super. 2002)); *Matter of Green*, [650 A.2d 1072, 1075 (Pa.Super. 1994)]. The length of time involved is only one circumstance to be considered. *Gulla, supra*. This Court has also considered society's concerns for stability in the child's life, such as whether there is a stable family unit to preserve. *Buccieri, supra*. An additional factor is whether the child's father "is willing to care [for the child]…and capable of doing so…." *Moyer, supra* at 963.

*Conroy v. Rosenwald*, 940 A.2d 409, 416-17 (Pa.Super. 2007).

Further, a proponent of fraud must demonstrate by clear and convincing evidence "(1) a misrepresentation, (2) a fraudulent utterance, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as a proximate result." *Ellison v. Lopez*, 959 A.2d 395, 398 (Pa.Super. 2008), *appeal denied*, 600 Pa. 771, 968 A.2d 233 (2009).

Significantly: "A misrepresentation need not be an actual statement; it can be manifest in the form of silence or failure to disclose relevant information when good faith requires disclosure." **Glover v. Severino**, 946 A.2d 710, 713 (Pa.Super. 2008). "Fraud comprises anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether by direct falsehood or innuendo, by speech **or silence**, word of mouth, or look or gesture." **Id.** (internal citation omitted) (emphasis in original). **See also N.C. v. M.H.**, 923 A.2d 499 (Pa.Super. 2007) (holding doctrine of paternity by estoppel was inapplicable where appellant operated for over ten years under false pretense that he was child's father due to mother's failure to inform appellant of extramarital affair she had around time of child's conception); **Gebler, supra** (holding trial court erred in applying doctrine of paternity by estoppel where appellant's behavior as responsible father for first eighteen months of child's life was due to mother's concealment of existence of other sexual partners around time of child's conception).

Instantly, the parties were never married and there is no intact family unit to preserve. Consequently, the presumption of paternity does not apply here. **See Vargo, supra**. Nevertheless, the trial court applied the doctrine of paternity by estoppel, reasoning:

> In this case, [Appellant] has never timely filed any petition to establish paternity or deny paternity. [Appellant] only made efforts verbally to a domestic relations officer that he was not the father. [Appellant] failed to appear for an initial DNA test, although he claimed no notice. He never took the steps to again make DNA an issue for seven (7) to eight (8)

years. Additionally, [Appellant] continued to pay child support for eight… years prior to the filing [of] his petition to terminate paternity. Thus, the case law, as well as the relevant facts support the finding of the court that paternity has been established by estoppel and [Appellant's] appeal of this [c]ourt's November 23, 2021 Order should be denied.

(Rule 1925(a) Opinion, filed 3/22/22, at 5-6). We cannot agree with the court's analysis.

Here, the record demonstrates that Appellant has no relationship with Child whatsoever, Appellant has not held Child out as his own to anyone, and Child does not know who Appellant is. The only thing Appellant has done relative to Child is to pay support. Notably, Appellant did not pay support voluntarily, but only as a result of wage garnishment by the court. On this record, there is no public policy interest in continuing Appellant's paternity to protect Child's best interests. **See Moyer, supra**; **Gebler, supra**. **See also K.E.M. v. P.C.S.**, 614 Pa. 508, 38 A.3d 798 (2012) (stating paternity by estoppel continues to pertain in Pennsylvania, but it will apply only where it can be shown, on developed record, that it is in best interests of involved child).

Additionally, Appellant has presented clear and convincing evidence of fraud in this case. Although the parties dispute the timing of when Appellee announced that Appellant was the father of her child, it is undisputed that Appellee told Appellant (and Appellee's mother) at some point in time prior to Child's birth that Appellant was in fact the father. Appellee failed to disclose in good faith that she had engaged in sexual relations with other partners prior

- 13 -

to conceiving Child, constituting a misrepresentation to Appellant. **See Glover, supra**. Appellee stated at the hearing that she could not recall if she engaged in sexual relations with other partners around the time of conception, but based on the DNA results proving Appellant is not the father, it is clear she did. Likewise, Appellee did not inform the Domestic Relations section of any other possible father of Child. Appellee made this misrepresentation with the intent that Appellant would be subject to pay child support. Her misrepresentation ultimately caused Appellant to do so by virtue of a court order. Under these facts, Appellant has established fraud. **See Ellison, supra**.

We acknowledge the trial court's reasoning that Appellant essentially failed to act for many years to deny paternity. Nevertheless, Appellant denied receipt of notice regarding the originally scheduled paternity test, and the record contains no evidence of notice.[3] Additionally, Appellant claimed he resided out-of-state following Child's birth. Appellant further alleged he repeatedly disputed his paternity with the Domestic Relations section but that

---

[3] In its opinion, the trial court cites Pa.R.C.P. 1910.15(e) (stating: "If defendant fails to appear as ordered for a conference, hearing or trial, or for genetic tests, the court shall, **upon proof of service on the defendant**, enter an order establishing paternity") (emphasis added). We emphasize that the record contains no notice of the originally scheduled paternity test, and Appellee did not produce such notice at the hearing. Further, the court's September 26, 2013 order establishing paternity does not indicate whether there was proof of service on Appellant prior to the court's entry of the order. Thus, the court's reliance on Rule 1910.15(e) is inappropriate here.

- 14 -

it was not until he met with a different caseworker in person that Domestic Relations assisted him with what steps to take.

Although the trial court and Appellee cite *Com. ex rel. Gonzalez v. Andreas*, 369 A.2d 416 (Pa.Super. 1976), for the proposition that Appellant's lack of due diligence estops him from denying paternity, that case is distinguishable. There, the parties married shortly after the child's birth, and the family **lived together for approximately three years after the child's birth**. During that time, the appellant supported the child as his own and never expressed doubts about the child's parentage. It was only after the parties had separated that the appellant questioned paternity. This Court stated: "Absent any overriding equities in favor of the putative father, **such as fraud**, the law cannot permit a party to renounce even an assumed duty of parentage when by doing so, the innocent child would be victimized." *Id.* at 419 (emphasis added). Here, however, we have already concluded that Appellant established fraud, and Child would not be "victimized" by terminating Appellant's paternity where Child does not even know Appellant.[4]

_____

[4] The trial court's reliance on *D.M. v. V.B.*, 87 A.3d 323 (Pa.Super. 2014) is similarly misplaced. The trial court cited that case for the proposition that "[w]hen a support order is entered in a case and the obligor fails to file a timely appeal, he is subsequently estopped from denying paternity. … If no timely direct appeal is taken from the support order, the paternity determination cannot be challenged later because it has been established as a matter of law." *Id.* at 327 (internal citation omitted). Nevertheless, this Court went on to state: "[E]xceptions to the conclusiveness of a support order on this issue of paternity [exist] where fraud or mutual mistake induces a party to enter into such an order." *Id.* (internal citation omitted).

Based upon the foregoing, we reverse the order finding Appellant to be Child's father via the doctrine of paternity by estoppel and requiring Appellant to pay child support.[5]

 Order reversed.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/23/2022

---

[5] Although Appellant requested reimbursement in his petition to terminate paternity, he does not expressly request reimbursement in his appellate brief or cite any law to support his claim that reimbursement is proper.  Thus, the issue of reimbursement is waived, and we decline to address it.  ***See In re Estate of Whitley***, 50 A.3d 203 (Pa.Super. 2012) (stating failure to cite relevant legal authority constitutes waiver of claim on appeal).