# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00282-CV

**James Hart, Appellant**

**v.**

**Debra Webster, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT NO. 24,611, HONORABLE REVA TOWSLEE CORBETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

James Hart appeals the district court's judgment, after a bench trial, denying his suit to establish paternity of the child C.W. He contends that the district court abused its discretion because the evidence was insufficient to support findings that (1) he was never married to C.W.'s mother Debra Webster, (2) he is not the presumed father of C.W., and (3) it is in C.W.'s best interest to deny Hart's request for court-ordered possession of C.W. We hold there is insufficient evidence to support the district court's finding that no marriage existed between Hart and Webster.

## BACKGROUND

Hart and Webster began dating in 1991. Webster became pregnant, and the two moved into a home bought by Hart during the pregnancy. Hart believed himself to be the father,

presuming an earlier vasectomy to have been ineffective. He attended prenatal appointments with Webster and was present at the birth of C.W. in May 1992. Hart and Webster lived together for the first eight years of C.W.'s life, and C.W. knew only Hart as his father. During that time, Webster and Hart referred to each other as husband and wife, took family Christmas photos, filed joint income tax returns, and even wore wedding bands. A neighbor testified at trial that he believed the two to have been married. Hart introduced several father's day cards he received from Webster and C.W.

Both Hart and Webster were married to other people at the beginning of their relationship. Hart testified that Webster assisted him in getting a divorce around the time C.W. was born. Webster's former husband is referred to in the record as "Mr. Sloan," and he is listed as the father on C.W.'s birth certificate.[1] Webster and Sloan were divorced in 1993.[2] At the hearing, Webster's attorney informed the court that another man, Ray Anti, had been determined to be C.W.'s biological father through genetic testing and that "there is a proceeding in [] court at this point to have him declared the biological father."

By 1996, the relationship between Hart and Webster began to deteriorate and Hart discovered that it was medically impossible for him to be C.W.'s biological father. However, Hart

---

[1] Hart testified that he was initially "under the impression that there wasn't any name on the birth certificate." He discovered that Sloan was listed as the father over a year later when Webster "filed for assistance" claiming Sloan as the father.

[2] At trial, the district court asked Webster to obtain a copy of her 1993 divorce decree. It appears that this document, which may contain a determination as to the paternity of C.W., was not produced or introduced into evidence. *See* Tex. Fam. Code Ann. § 6.406 (West 1998) (mandatory joinder of suit affecting parent-child relationship to suit for dissolution of marriage).

testified that this discovery did not change his relationship with C.W. and that he still considered C.W. to be his son. Hart and Webster eventually separated in 2000. C.W. visited with Hart often, and Hart continued to treat C.W. as his son, providing insurance, paying C.W.'s tuition for private school, and paying child support to Webster. Hart, a veteran of the Vietnam War, was hospitalized for post traumatic stress disorder in 2001. In connection with Hart's hospitalization, Webster completed a "Family Information Supplement" form, listing C.W. as Hart's child and herself as Hart's "ex-wife—common law."[3] By 2003, Webster had become engaged to another man, and C.W. visited Hart less frequently. Eventually, Webster informed C.W. that Hart was not his biological father and prohibited visitation.

Hart filed suit in April 2003 seeking to establish his paternity and right to possession. After bench trial in which only Hart and a neighbor testified, the district court ruled in favor of Webster finding that Hart and Webster were never married, that Hart is not the father of C.W., and that it was in the best interest of the child to deny possession.

## DISCUSSION

Hart argues that he is the presumed father of C.W. pursuant to two separate provisions of the family code. He contends that under section 160.204(a)(3), he is the presumed father because

---

[3] On cross-examination, Hart admitted making a notation on a corner of the front page of the document. He denied completing the form himself, explaining that the form had been mailed to Webster for her to fill out after he had been admitted to the hospital.

he and Webster were married at the time of C.W.'s birth. *See* Tex. Fam. Code Ann. § 160.204(a)(3) (West Supp. 2005).[4] Alternatively, Hart asserts that paternity is presumed because he and Webster were married after C.W.'s birth, he voluntarily asserted paternity, and he promised in a record to support C.W. as his own. *See id.* § 160.204(a)(4)(C). These contentions were defeated by the district court's finding that "no marriage, common law or otherwise, existed between JAMES HART, Petitioner, and DEBRA WEBSTER, Respondent."

A trial court's order in a suit affecting the parent-child relationship will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.). We conduct a two-pronged inquiry: (1) whether the trial court had sufficient information on which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Echols*, 85 S.W.3d at 477-78. The traditional sufficiency of the evidence review comes into play with regard to the first question. *Id.* If there is sufficient evidence to support

---

[4] This section of the family code was amended in 2003. *See* Act effective September 1, 2003, 78th Leg., R.S., ch. 1248, § 6, 2003 Tex. Gen. Laws 3537. The amended code provides that a person is presumed the father of a child if, "during the first two years of a child's life, he continuously resided in the household in which the child resided and he represented to others that the child was his own." *See* Tex. Fam. Code Ann. § 160.204(a)(5) (West Supp. 2005). It appears that Hart would qualify as a presumed father under this amendment, but the provision applies only to suits filed after September 1, 2003. *See* Act effective September 1, 2003, 78th Leg., R.S., ch.1248, § 6, 2003 Tex. Gen. Laws 3537, 3538. Hart's suit was filed in April 2003.

Because Hart relies on other code provisions that are unchanged, we will refer to the current code for the purpose of clarity.

the judgment, we then determine whether, based on the elicited evidence, the trial court's decision was otherwise arbitrary or unreasonable. *Id.*

**Common Law Marriage**

There is no contention that Hart and Webster were ever formally married; Hart contends that they were informally married and challenges the district court's finding of no marriage as unsupported by legally sufficient evidence. In conducting a legal-sufficiency review, we credit favorable evidence if a reasonable fact-finder could and we disregard contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827-28 (Tex. 2005). The test for legal sufficiency is whether the evidence would enable reasonable people to reach the judgment being reviewed. *Id.*

To establish an informal or common law marriage, there must be proof that (1) the parties agreed to be married, (2) lived together after the agreement and (3) represented to others that they were married. Tex. Fam Code Ann. § 2.401(a)(2) (West Supp. 2005); *Mills v. Mest*, 94 S.W.3d 72, 73 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Under the standard of review for legal sufficiency, Hart must demonstrate that no reasonable fact-finder could have concluded that he was not married to Webster.

It is clear that Hart and Webster could not have been married at the time of C.W.'s birth because both were married to other people. *See* Tex. Fam. Code Ann. § 2.401(d) ("A person may not be a party to an informal marriage . . . if the person is presently married."). However, both

5

Hart and Webster were divorced from their prior spouses soon after C.W.'s birth. Hart's uncontested testimony at trial was that he and Webster lived together and represented themselves as married from 1991 through 2000. Although there is no direct evidence of an agreement to be married, a tacit agreement to be married may be inferred from circumstantial evidence. *See Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993); *Mills*, 94 S.W.3d at 74. Quoting an article describing the 1989 amendments to the statute governing common law marriage, the supreme court discussed the quality of evidence that would establish an agreement to marry:

> As the statute now stands, an occasional uncontradicted reference to a cohabitant as "my wife" or "my husband" or "mine" will not prove a tacit agreement to be married without corroboration. Such a reference by the contestant of the union will, of course, be stronger evidence of an agreement than such a statement by the proponent. The non-social context of the contestant's reference to the proponent as his "wife" or her "husband" will also receive closer scrutiny. If the statement is made in a self-serving context, the fact-finder may be expected to disbelieve the truth of the statement. A forthright assertion of marriage with the consequence of liability (as when an alleged spouse seeks admission of the other to a hospital) may, on the other hand be far more probative of a tacit agreement to be married.

*Russell*, 865 S.W.2d at 932 (quoting Joseph W. McNight, Family Law: Husband and Wife, 44 S.W.L.J. 1, 2-3 (1990)).

Hart's uncontradicted testimony established much more than an occasional reference to Webster as his wife. The two consistently referred to each other as married for a period of eight years. After both were divorced from their prior spouses, Hart and Webster exchanged wedding bands. A neighbor testified that, while he was visiting at the couple's home, "[Hart] didn't have his

ring on and [Webster] was giving him a hard time about not wearing his ring." Webster completed a form admitting Hart to a VA hospital in which Webster identified herself as Hart's "ex-wife—common law," listed the dates of the marriage from 1992-2000, and named C.W. as Hart's child. Additionally, Hart testified that they filed joint federal income tax returns. This is precisely the kind of evidence identified by the supreme court as uniquely probative of a tacit agreement to marry. *See id*. Importantly, we find no evidence in the record that contradicts these representations or is inconsistent with an agreement to be married. Although present in the courtroom, Webster did not testify to deny the marriage. Nor was there any indication that either party intended to deceive the public about the true nature of their relationship.

Viewing the record as a whole, giving credit to all evidence in favor of the verdict, we find that no reasonable fact-finder could have ignored the uncontested evidence that Hart and Webster lived together and represented themselves as married. Moreover, no reasonable fact-finder could have determined that Hart and Webster did not implicitly agree to be married after the two had divorced their prior spouses and exchanged wedding rings. Accordingly, we hold that there is legally insufficient evidence to support the district court's finding that there was no marriage.

**Presumed Father**

Having held that the evidence conclusively established that Hart and Webster were married at some point after the birth of C.W., we next consider Hart's claim that there is insufficient evidence supporting the district court's finding that Hart may not be considered the presumed father

7

under section 160.204(a)(4)(C) of the family code.  Under that section, a person is the presumed father of a child if he (1) marries the child's mother after the child is born, (2) voluntarily asserts paternity, and (3) promises in a record to support the child as his own.  Tex. Fam. Code Ann. § 160.204(a)(4)(C).  Because of its finding that Hart and Webster were never married, the district court did not reach the other elements under section 160.204(a)(4)(C).  We will not imply that the district court made unnecessary findings that Hart failed to establish the other elements of section 160.204(a)(4)(C).  Accordingly, we remand the case for further proceedings to allow the district court to make a final determination as to paternity.

**Best Interest of the Child**

We acknowledge that the district court also found that it is in the best interest of C.W. that Hart have no court-ordered possession.  However, this finding was made on the basis of a finding that Hart is not C.W.'s father.  Because we have held that a marriage existed between Hart and Webster, a subsequent finding that Hart is C.W.'s father is now possible.  In the event the district court determines that Hart is presumed to be the father under the statute, the court will have to revisit this issue of the best interest of the child in deciding whether that presumption has been rebutted. *See In re Jesusa V.*, 85 P.3d 2, 14 (Cal. 2004); *N.A.H. v. S.L.S.*, 9 P.3d 354, 363-64 (Colo. 2000); *G.D.K. v. State*, 92 P.3d 834, 837-38 (Wyo. 2004); *cf.* Tex. Fam. Code Ann. § 153.001(a)(1) (West 2002) ("The public policy of the state is to assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child.").

## CONCLUSION

We sustain Hart's issues challenging the sufficiency of the evidence supporting the district court's judgment and hold that the district court abused its discretion by denying Hart's claims on this record. Because the district court did not reach all of the issues necessary to determine whether Hart may be legally recognized as C.W.'s father, we reverse the judgment and remand the case for further proceedings.[5]

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Patterson and Puryear

Reversed and Remanded

Filed:   June 23, 2006

_____

[5] The district court may also consider whether equitable estoppel prevents Webster from denying Hart's paternity. *See In re Shockley*, 123 S.W.3d 642, 652 (Tex. App.—El Paso 2003, no pet.). ("Estoppel is based on the public policy that children should be secure in knowing who their parents are. If a person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father she has known all her life is not in fact her father."). We apply equitable estoppel in paternity actions to achieve fairness by holding parents to their prior conduct regarding the paternity of a child. *Id.*; *see also Fish v. Behers*, 741 A.2d 721, 723 (Pa. 1999) ("Under certain circumstances, a person might be estopped from challenging paternity where that person has by his or her conduct accepted a given person as the father of the child."). We impose equitable estoppel only in the best interest of the child, to protect the status of a child in an already recognized and operative parent-child relationship. *In re Shockley*, 123 S.W.3d at 652; *Fish*, 741 A.2d at 724; *Sara S. v. James T.*, 299 A.D.2d 785, 785 (N.Y.A.D. 3 Dept. 2002).

9