**Tooch v. Lynk**

C.P. of Lawrence County, No. 10507 of 2012, C.A.

*Garen Fedeles*, for plaintiff.
*Mick A. Turco, Jr.*, for defendant and intervernor.
*Louis Pomerico*, for additional intervenor.

HODGE, *J.*, January 2, 2014—Before the court for disposition is a petition to intervene filed on behalf of the additional intervenor, Samuel G. Hart (hereinafter, "Hart"), and a motion for contempt and motion to modify custody, filed on behalf of the defendant, Brian M. Lynk (hereinafter, "Lynk"). Prior to addressing the issues pending before the court, the court provides the following procedural and factual background of this case:

On July 22, 2010, the plaintiff, Amanda S. Tooch, (hereinafter, "mother") filed a complaint for custody in the Beaver County Court of Common Pleas seeking primary custody of the minor child, Braydon Lynk, born February 17, 2008. The case proceeded to trial in Beaver County, Pennsylvania, and on February 7, 2011, the Honorable Judge Kim Tesla entered a custody order granting mother primary custody of the minor child, subject to Lynk's supervised partial custody rights.

On January 30, 2012, Donna Newsom (hereinafter, "Newsom") filed a petition to intervene with the Beaver County Court of Common Pleas.[1] The court granted Newsom's petition, and Newsom subsequently filed a petition for partial custody. When Newsom filed her petition for partial custody, Lynk resided in Florida, and

---

1. Defendant Newsom is the natural mother of defendant Lynk, and she asserted standing in the above custody action as the minor child's paternal grandmother.

he had limited visitation with the minor child. Newsom asserted that she previously enjoyed a good relationship with the minor child, and she requested partial custody on that basis. Following a custody conciliation conference, a new custody order was entered granting mother primary physical custody of the minor child subject to the partial custody rights of the defendants on the second weekend of each month.

Shortly thereafter, on March 29, 2012, Hart filed a petition to intervene. In his petition, Hart asserted that he was the natural father of the minor child and that mother consented to his visiting with the minor child following a DNA test on July 14, 2011. Prior to the court ruling on Hart's petition to intervene, Lynk filed a motion to transfer venue, which was unopposed by any of the above named parties. The Honorable Judge Deborah A. Kunselman transferred this case to the court of common pleas, Lawrence County, Pennsylvania on April 24, 2012.

Hart then filed a complaint in paternity on May 2, 2012. Defendants responded by filing preliminary objections to Hart's paternity complaint, which were overruled by this court on July 2, 2012. Further hearings were scheduled on Hart's petition to intervene, and the matter is presently before the court for disposition. Lynk generally relies on the doctrine of paternity by estoppel to support his argument that Hart should be precluded from intervening in the instant custody case. Lynk argue that mother consistently held him out as the minor child's natural father for the first two years of the child's life. Additionally, Lynk executed an acknowledgement of paternity in the corresponding domestic relations action, and consistently paid mother support for the minor child. Hart alternatively argues that as the biological father, his right to intervene is mandatory,

pursuant to rule 1915.6 of the Pennsylvania Rules of Civil Procedure. Hart testified that he has actively been involved in the child's life since he became aware of his status as the biological father.

Paternity by estoppel is a legal determination that precludes an individual from denying parentage because of a person's conduct regardless of the individual's biological relationship to the minor child. *T.E.B. v. C.A.B. v. P.D.K., Jr.,* 74 A.3d 170, 173 (Pa. Super. 2013). Thus, a person cannot challenge a parental status which he or she has previously chosen to accept. *Id.* In this regard, the doctrine of paternity by estoppel seeks to protect the interests of the subject child by preserving the status quo established by the parties. *Id.* Pennsylvania case law has developed this doctrine in conformity to the public policy that "children should be secure in knowing who their parents are. If a certain person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father he had known all his life is not in fact his father." *Id.* (quoting *Fish v. Behers*, 741 A.2d 721, 724 (Pa. 1999)).

However, the principles which family law doctrines were once premised upon hold a diminishing role in today's societal values. As the familiar structure continues to erode, the common law principles, which once stood to protect it, become more theoretical and less applicable. Thus, the courts are left in the precarious position of evaluating Pennsylvania's jurisprudence between the best interests of children and the ever changing societal norm that defines a family unit. Recognizing this fact, the Supreme Court of Pennsylvania recently considered the continuing applicability of the doctrine and held that it is

the interests of the child that are paramount: "paternity by estoppel continues to pertain in Pennsylvania, but it will apply only where it can be shown, on a developed record, that it is in the best interests of the involved child." *K.E.M. v. P.C.S.*, 38 A.3d 798, 810 (Pa. 2012). If there is no difference in the supportive relationship available from the "psychological" and biological fathers, "that the responsibility for fatherhood should lie with the biological father." *Id.*

The doctrine is typically applied in two instances: first, to preclude a man, who held a child out as his own from avoiding further support after his relationship with the mother has ended; and second, to preclude a woman, who held one man out as her child's father, from seeking support from another man later on. *T.E.B.*, *supra*, at 174. However, the doctrine of paternity by estoppel can also preclude a biological father from asserting his parental rights. *See e.g.*; *C.T.D. v. N.E.E.*, 653 A.2d 28 (Pa. Super. 1995). In that case, the mother had intimate relationships with various men when the subject child was conceived. *Id.* at 29. Mother married one of these men ("husband") and the two held the child out to be husband's biological son. Subsequently, a second man, also a former intimate partner of mother's, petitioned for blood tests and custody. *Id.* Mother and husband attempted to preclude her former partner from intervening via the doctrine of paternity by estoppel. *Id.* Upon review, the Superior Court of Pennsylvania determined that mother and husband actively misled the child as to his parentage, and because of their own deception, it was improper for either mother or husband to preclude the biological father from asserting his parental rights. *Id.* However, the court also held that the putative father's own failure to act could preclude

him from raising a claim of paternity. *Id.* at 31. The case was subsequently remanded to the trial court for a factual determination regarding whether the putative father timely asserted a parental claim relative to the subject child. *Id.* Along with remanding the case for further factual determinations, the Superior Court directed the trial court to analyze the doctrine of paternity by estoppel along with the statutory factors set forth at 23 Pa.C.S.A. §5328(a). *Id.*

Applying the appellate authority set forth above, in addition to considering each of the statutory factors relating to a best interest analysis, the court concludes that Hart's request to intervene should be granted for the following reasons: At first instance, the court believes that the available case creates additional complexity to an already difficult issue. The court is called upon to exercise its equitable powers and discretion in analyzing the conduct of the parties in addition to the best interests of the minor child. This already difficult examination is only complicated by the fact that the competing individuals, Lynk and Hart, each come before the court with clean hands. In fact, the court hesitates to find fault in the conduct of either party in relation to the minor child. For years, Lynk believed that he was the minor child's natural father. Lynk enjoyed developing a strong relationship with the child even though his relationship with mother ended.

Alternatively, Hart was not aware that he was the biological father of the minor child until two years after the child's birth. Hart promptly initiated a paternity action in the Court of Common Pleas of Beaver County. Furthermore, mother has allowed Hart to visit with the minor child and develop a relationship with the child. The court can succinctly summarize the facts by stating that both Lynk and Hart are emotionally invested in the minor

child and that the minor child has a valuable relationship with both men. The court concludes that a determination that might eliminate either father from the child's life would be detrimental to the child and against his best interests.

Consistent with this opinion, the court will enter the following order of court:

## ORDER OF COURT

And now this 2nd day of January, 2014, following a hearing on the additional intervenor's petition to intervene; defendant's petition for contempt; and defendant's petition to modify custody, with the plaintiff, Amanda S. Tooch, appearing and being represented by Garen Fedeles, Esquire; the defendant and Intervenor, Brian M. Lynk and Donna Newsom, appearing and being represented by Nick Turco, Esquire; and the additional intervenor, Samuel G. Hart, appearing and being represented by Louis Pomerico, Esquire, and in consideration of the testimony and evidence presented, the court hereby orders and decrees as follows:

1. The plaintiff shall make the minor child available for genetic testing.

2. The additional intervenor, Samuel G. Hart, shall be responsible for all costs associated with the testing.

3. Following the test results, any party may motion the court for further Hearings.

4. Defendant's petition for contempt is denied.

5. Defendant's petition to modify custody is denied.

6. The custody order issued on November 19, 2012 is hereby reinstated and shall supersede any other order of

court relating to custody entered in the instant proceedings.

7. The prothonotary shall properly serve notice of this order of court upon counsel of record for the parties and upon any unrepresented party at their last known address as contained in the court's file.