J-S91027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| S.A.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| R.L.B., JR. | : | |
| | : | |
| Appellant | : | No. 911 MDA 2016 |

Appeal from the Order Entered May 5, 2016
in the Court of Common Pleas of Lancaster County
Domestic Relations at No(s): 2013-00282,
PACSES 624113754

BEFORE:  FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY RANSOM, J.:                    **FILED FEBRUARY 21, 2017**

R.L.B. ("Father") appeals from the May 5, 2016, order entered by the Lancaster County Court of Common Pleas ordering Father to pay child support to S.A.G. ("Mother") for minor child, M.C. ("Child").  After careful review, we affirm.

We adopt the following from the trial court's findings of fact, which are supported by the record.  **See** Trial Court Memorandum Opinion and Order, 12/01/2015, at 3-13.

Child was born in the Commonwealth of Virginia on June 24, 2004. R.C. was Mother's boyfriend immediately after Mother became pregnant with Child.  R.C. believed that he was Child's father, was present at Child's birth,

---

[*] Former Justice specially assigned to the Superior Court.

and was identified as the father on Child's birth certificate. Thereafter, R.C.'s parents provided financial support to Child.

Nevertheless, Mother and Father had been involved in an intimate relationship at times from 2002 into 2004, and Mother "knew" that Father was the biological parent of Child. Sometime after 2005, Mother told Father that he was the biological parent. Following Child's birth, Father visited with Child and developed a relationship with her. Father purchased gifts for Child and took Child on vacations. The relationship was longstanding. Father relocated from Virginia to Pennsylvania in 2005. In 2012 Father took Child on a two-week summer vacation to Dorney Park, located in Allentown, Pennsylvania.

In January 2005, Mother commenced a support action against R.C. However, Mother was incarcerated thereafter on two occasions. During her periods of incarceration, Child was cared for by maternal grandmother or R.C.'s parents. Following her second release from incarceration, Mother requested genetic testing to confirm whether R.C. was the biological parent of Child. Testing excluded R.C. as the biological parent. Thus, in October 2011, a domestic relations court in Mecklenburg County, Virginia, issued an

order directing that R.C. cannot be legally compelled to pay child support for Child.[1]

Mother was receiving state assistance from Virginia. As R.C. had been excluded as the biological parent of Child, Mother was required to file for support against Father. Subsequent genetic testing confirmed that Father is the biological parent of Child.

Hearings were held in this matter in April and August 2013. At these hearings, Father stated his intention to continue his relationship with Child but contested his support obligation. Child acknowledged that she has "two daddies," but suggested that she learned to tell the truth from her Father. Based upon the testing results and testimony from the hearings, the trial court recognized Father as both the biological and legal father of Child. In October 2013, this matter proceeded to a support conference, following which, the trial court adopted the conference officer's recommendation of support.

Father sought additional hearings and argued that the doctrine of paternity by estoppel worked to preclude his support obligations. The trial court rejected his arguments without analysis, and Father timely appealed. Following a procedural delay, this Court reversed the support order and

_____

[1] A second order, also issued in October 2011, recognized R.C. as the psychological father of Child, but did not define the identity of Child's putative father.

remanded for further proceedings, specifically directing the court to address Father's arguments and, specifically, the relevant factors outlined in **R.K.J. v. S.P.K.**, 77 A.3d 33 (Pa. Super. 2013). **See S.A.G. v. R.L.B.**, 113 A.3d 352 (Pa. Super. 2014) (unpublished memorandum).

Hearings were held in March and May 2015. Thereafter, the court rejected Father's contention that he was not liable for support. Following support conferences, the court issued a final order of support in May 2016.

Father timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued an order stating that the issues raised in Father's Rule 1925(b) statement had been fully considered and addressed in its December 1, 2015 memorandum opinion and order and its February 1, 2016 supplemental opinion.

Father presents one issue for review:

Whether the trial court erred as a matter of law when it found that the doctrine of paternity by estoppel did not apply when the putative father and his family raised the child during the early years of her life while the biological father has had limited contact with the child throughout her life.

Father's Brief at 4.

We review a child support order, including matters involving a question of paternity, for abuse of discretion. **Vargo v. Schwartz**, 940 A.2d 459, 462 (Pa. Super. 2007). The trial court is responsible for making factual determinations, weighing the evidence, and making credibility

- 4 -

determinations, and we will not disturb its findings if the record supports them. *Id.*

Father asserts that the trial court erred in finding that the doctrine of paternity by estoppel did not apply. Paternity by estoppel:

> is merely the legal determination that because of a person's conduct (e.g., holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father.

*Fish v. Behers*, 741 A.2d 721, 723 (1999). Paternity by estoppel will only apply where it can be shown, on a developed record, that it is in the best interests of the involved child. *K.E.M. v. P.C.S.*, 38 A.3d 798, 810 (Pa. 2012); *see also Vargo*, 940 A.2d at 464.

This Court has recognized the following psychological and economic considerations as relevant to the determination of the child's best interests in a support case involving an allegation of paternity by estoppel:

> (1) a party cannot renounce an assumed duty of parentage when the innocent child would be victimized; (2) the law can prohibit a putative father from employing sanctions of the law to avoid the obligations that his assumed relationship with the child would impose; (3) the closeness of the child's relationship to the putative father; (4) the harm that would befall the child if the putative father's parental status were to be disestablished; and (5) the need for continuity, financial support, and potential psychological security arising out of an established parent-child relationship.

*R.K.J.*, 77 A.3d at 38.

Father claims that the trial court erred as a matter of law when it found that the doctrine of paternity by estoppel did not apply where R.C. and his family raised the child during the early years of her life. *See* Appellant's Brief at 4. Appellant argues that it would not be in the best interests of the child to disestablish the paternity of R.C., who acted as the child's father during her youngest years. *Id.* at 9.

The trial court analyzed the factors identified ***R.K.J.*** and concluded: 1) the order issued in Virginia prevented a support obligation from being imposed upon R.C., though R.C. has continued the relationship; 2) that Father, not R.C., was attempting to avoid the obligations his assumed relationship with Child would impose; 3) there was evidence R.C. would continue his close relationship with Child; 4) no harm came to Child as a result of R.C.'s disestablishment of paternity, as he continues to have a relationship with Child and provide material support; and 5) Child has psychological and emotional security with both R.C. and Father, and given Child's positive description of her bond with Father, it would be in her best interests to continue the relationship. TCO at 15-20. Further, Father remains the only person legally chargeable with fulfilling the role of father in respect to the duty of support, and it would be in the child's best interests if that support continued. TCO at 20.

Based upon our examination of the record, the trial court appropriately discussed the factors outlined in ***R.K.J.*** and concluded that the best interests of the child would be served if Father contributes to her support. ***See***

***R.K.J.***, 77 A.3d at 38.  We do not discern an abuse of discretion in the trial court's analysis or conclusions of law and, accordingly, affirm.  ***See Vargo***, 940 A.2d at 462.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/21/2017